**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUBPOENA ISSUED IN:<br><br>*MWK Recruiting, Inc. v. Jowers, et al.*<br>pending in the U.S. District Court for the<br>Western District of Texas,<br>Case No. 1:18-cv-00444-RP<br><br>BREAKING MEDIA INC.<br>dba ABOVE THE LAW,<br><br>         Petitioner,<br><br>    -against-<br><br>EVAN P. JOWERS,<br><br>         Respondent. | Misc No. _____<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW OF PETITIONER BREAKING MEDIA, INC.**
**IN SUPPORT OF ITS MOTION TO QUASH NON-PARTY SUBPOENA**
**<u>ON GROUNDS OF, AMONG OTHERS, REPORTERS' PRIVILEGE</u>**

| | |
|---|---|
| Dated: New York, New York<br>    February 17, 2021 | MILLER KORZENIK SOMMERS RAYMAN LLP<br><br>By: <u>/s/ David S. Korzenik</u><br>David S. Korzenik<br>dkorzenik@mkslex.com<br>Terence P. Keegan<br>tkeegan@mkslex.com<br>Zachary M. Press<br>zpress@mkslex.com<br>1501 Broadway, Suite 2015<br>New York, New York 10036<br>Phone: (212) 752-9200<br><br>*Attorneys for Breaking Media, Inc.*<br>*dba Above the Law* |

## TABLE OF CONTENTS

**ARGUMENT** ................................................................................................................................ 1

    **The Circumstances and Time Constraints in Which this Motion Had to Be Made** ............ 2

    **The Crux of the Reporters' Privilege Grounds to Quash** ....................................................... 3

    **Grounds for the Motion and Relief Sought** ............................................................................ 4

    **Reporter's Privilege** ................................................................................................................ 6

    **Jowers Cannot Meet the Requirements of the Second Circuit's Gonzales Test or of New York's Shield Law Civil Rights Law § 79-h as to Non-Confidential Information** .............. 7

    **Gonzalez Test as to Non-Confidential Materials** ................................................................... 9

    **Required Nexus to a "Significant Issue"** ............................................................................... 9

    **Balancing Test** ...................................................................................................................... 10

    **Jowers Fails To Provide Reasonable Notice, and His Subpoena Violates Rules 30 and 45** ......................................................................................... 12

    **Further Rule 45(d)(2)(B) Objections to Subpoena Document Demands** ........................... 13

**CONCLUSION** ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,
   No. 20-Misc-23, 2020 WL 4700910 (S.D.N.Y. Aug. 13, 2020) ............................................... 15

*Gonzales v. National Broadcasting Co.*,
   194 F.3d 29 (2d Cir. 1999) (Leval, J) ................................................................................ passim

*In re McCray, Richardson, Santana, Wise, Salaam Litig.*,
   991 F. Supp. 2d 464 (S.D.N.Y. 2013) ........................................................................ 13, 14, 15

*Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ................................................................................. 13

*Sikelianos v. City of New York*,
   05 CIV. 7673 RJS/JCF, 2008 WL 2465120 (S.D.N.Y. June 18, 2018) ........................ 11, 13, 14

*U.S. v. Culbertson*, 630 F.2d 139 (3d Cir. 1980) ........................................................................... 13

**Statutes**

New York Civil Rights Law §79-h .............................................................................................. 4, 9

**Rules**

Fed. R. Civ. P. 30 ............................................................................................................ 5, 6, 8, 15

Fed. R. Civ. P. 45 .................................................................................................................. passim

**Constitutional Provisions**

N.Y. State Constitution, Article 8 ................................................................................................... 9

U.S. Constitution, First Amendment .............................................................................................. 9

## MEMORANDUM OF LAW OF PETITIONER BREAKING MEDIA, INC. IN SUPPORT OF ITS MOTION TO QUASH NON-PARTY SUBPOENA ON GROUNDS OF, AMONG OTHERS, REPORTERS' PRIVILEGE

### ARGUMENT

**Petitioner Breaking Media, Inc**., publisher of *AboveTheLaw.com* ("ATL" or "Petitioner") by its attorneys, Miller Korzenik Sommers Rayman LLP, submits this Memorandum of Law in support of its Motion pursuant to Fed. R. Civ. P. 45 To Quash a Subpoena issued to it by Respondent Evan Jowers ("Jowers") from an action pending in the Western District of Texas entitled *MWK Recruiting v. Jowers, et al.*, No. 1:18-cv-00444-RP (the "Texas Litigation").  Among other things, ATL moves to quash on grounds of the *Reporters' Privilege* under New York Civil Rights Law §79-h and under the Federal Reporters' Privilege, and all applicable state law including State and Federal Constitutions.

***The Subpoena*** seeks 1) production of documents (*20 categories of documents*) and 2) a deposition of Petitioner (*on 25 topics*) all to be complied with by *February 18, 2021 at 12:00pm* (the "Subpoena").  It sets the place for compliance in the *Southern District of New York* at 77 Water St., New York, NY 10005.  Its requests largely seek disclosures from *Above the Law* about four articles it published – two of them covered a judge's rulings in the pending Texas litigation.  A copy of the Subpoena is **Exhibit A** to the Declaration of David S. Korzenik dated February 17, 2021 ("Korzenik Decl.").  *Copies of two of the ATL articles are attached to the Subpoena as Exhibits A and B*.  A reading of the two articles will be dispositive of this Motion.

***Rule 45(d)(2)(B) Objections***: Objections are permitted under Rule 45 where documents are demanded by subpoena.  Respondent here has also sought a deposition.  But to the extent that documents are demanded, this Memorandum of Law in support of ATL's Motion to Quash should also be treated by Respondent's counsel as Petitioner's Objections per Fed. R. Civ. P.

45(d)(2)(B).

***The Circumstances and Time Constraints in Which this Motion Had to Be Made***: Counsel for Respondent Jowers (Robert Tauler, Esq.) and for Petitioner ATL (David Korzenik, Esq.) have an obligation under Rule 30(b)(6) to meet and confer on the deposition's scope *before* any motions are made.  *See* Fed. R. Civ. P. 30(b)(6).

Counsel for ATL contacted Mr. Tauler for the first time by telephone on President's Day, this Monday, February 15 to discuss the Subpoena and to initiate meet and confer discussions – discussions that might have avoided the need for this motion.  *See* Korzenik Decl. ¶4.  In the February 15 call, ATL's counsel inquired about the nature of the Texas action and what the discovery needs there entailed.  He noted the Reporters Privilege issue that needed to be assessed at least as it related to a substantial portion of the Subpoena demands.  ATL's counsel said that he would discuss the issues with ATL; find out what ATL had; and what was at stake.  He would then speak further with Jowers' counsel.  *See* Korzenik Decl. ¶6.

In the meantime, ATL's counsel requested an extension of time in which to make ATL's motion to quash so that a proper meet and confer could be completed and motion practice avoided or at least narrowed.  Jowers' counsel seemed amenable to that and asked ATL's counsel to send a stipulation which he would consider.  ATL's counsel prepared and sent Jowers' counsel the stipulation the same day, February 15.  Korzenik Decl. ¶7.

On February 16, at 3:13pm, Jowers' counsel emailed ATL's counsel to say that he could *not* agree to extend any time.  He said that his discovery cut-off in the Texas Litigation was this Friday, February 19.  Jowers' counsel desired to go ahead with his Rule 30(b)(6) deposition on Thursday, February 18.  *See* Korzenik Decl. ¶8.  Mr. Tauler indicated in our earlier discussion that he was taking Kinney's deposition this week.

That meant that ATL had to make this motion to quash by February 17, 2021 before the Feb. 18 deposition date; but without having been allowed enough time to complete the meet and confer required under Rule 30(b)(6). That gave ATL's counsel no more than 24 hours in which to prepare and file this Motion to Quash. Korzenik Decl. ¶9.

ATL, therefore, among other relief sought, requests additional time in which to supplement its motion papers. ATL should not have to carry the cost of this motion practice which could have been avoided.

**The Crux of the Reporters' Privilege Grounds to Quash**: There are many grounds for granting this Motion To Quash. But here is the crux of the Reporters' Privilege issue: As a legal news outlet, ATL does not have to reveal who its sources *were* for its articles; or even who *were not* its sources. *See, e.g.*, *Gonzales v National Broadcasting Co.*, 194 F.3d 29 (2d Cir. 1999).[1] Jowers' *45 demands* seek in various repetitive ways to find out who ATL's sources were on the two articles about the Texas rulings. They want all "communications between YOU and [Robert] Kinney relating to . . . the Jowers litigation," relating to ATL's "December Article," relating to ATL's "April article," etc. There are many variations on the same inquiry – asking for ATL's files on its "investigation" of all the articles. All of them indiscriminately demand documents from ATL's reporter's file. The Reporters' Privilege bars Jowers from "sifting" through ATL's files to see "if" there might be some helpful or interesting documents that might support his case in Texas.

Kinney is a principle of the plaintiff company in the Texas case. And Jowers' counsel contends that Kinney was a source for the two ATL articles. Why might that be relevant?

---

[1] To overcome the privilege, Jowers will have to show that he can identify with particularity the specific document(s) that he needs; he must show that he could not get it elsewhere; and he must show that it is material and essential to a defense or claim that he is making. It cannot just be nice "color" or good cross in a trial. *Gonzales*, 194 F.3d at 35.

3

Jowers' counsel entertains the notion that the ATL articles were "*criminal*," in that they "*interfered with the deliberative process*" of the court in Texas by publishing the two articles about the Texas rulings. That assertion is frivolous for a number of reasons. But, the two facts that end the inquiry are these:

 1) A simple reading of the two Articles shows that they reveal nothing more than what the Texas rulings said about Jowers and his counsel, and what happened in the case – as the Pacer docket reveals. The two Articles consist largely of block quotations from the Court rulings. They are *not investigative pieces*; they just report and comment on what the Court said and what happened on the docket; and

 2) The rulings were already reported by other legal news outlets, including *Law.com, Law360* and *Bloomberg Law* before ATL published its own report on the rulings.

Hence, there was nothing revealed that was not already part of the court record; nothing revealed that was not already previously reported by other legal news outlets; nothing that could possibly have "interfered with the [Texas Court's] deliberative process."

 And that means that the speculative premise of Jowers' counsel is not just frivolous, but he is hoping to use it as grounds to "sift" through ATL's files to see if there *might* be *something* that *could be* interesting to Jowers' case. But the premise and rationale for such a "sifting" inquiry is manifestly false. The Court should reject it. And the requests that seek information about ATL news reporting should therefore be quashed.

 ***Grounds for the Motion and Relief Sought***: By this Motion, Petitioner seeks this relief:

1. An Order *quashing the Subpoena* on grounds of the Reporters' Privilege. The bulk of the Requests seek information from the reporter's files regarding the publication of four articles published by ATL – the two most important ones about the Texas lawsuit;

4

2. An Order *quashing the subpoena* on the grounds that Respondent has "failed to allow reasonable time to comply" per Rule 45(d)(3)(A)(i) with Jowers' 45 demands; and that Jowers' counsel has not allowed time for a proper Meet & Confer in advance of this motion practice as required by Fed. R. Civ. P. 30(b)(6) (and as is accepted and expected practice under Rule 45 and many judges' individual rules).  By forcing ATL to incur the costs of a motion to quash before issues are either resolved or narrowed, Jowers has imposed needless cost and effort on Petitioner ATL;

3. *Rule 45(d)(1) protections due Subpoenaed Non-Parties:* For Jowers by his counsel to persist with this subpoena which is aimed at privileged information and which is pressed without a proper meet and confer is a violation of the "duty" which Jowers owes to ATL and to the Court under Fed. R. Civ. P. 45(d)(1). As that Rule provides (emphasis added),

> "the Court . . . **must** enforce this duty and impose an appropriate sanction – which may include . . . reasonable attorney's fees . . . ."

That can be done by an order quashing the subpoena or granting ATL its fees or both.

4. An Order *allowing Petitioner ATL additional time* to brief its motion to quash given that Respondent's counsel informed ATL's counsel only yesterday, February 16 at 3:13pm, that he would not extend time to complete the meet and confer, or to set an extended briefing schedule if the meet and confer failed to resolve the matter.  *See* Korzenik Decl. ¶8.

5. An Order *quashing the Subpoena on the grounds that it was never properly served* on ATL.  Jowers' counsel claims to have served the Subpoena on February 5, but nothing was received at ATL's 611 Broadway offices either on February 5 or on February 12 when its office manager was present.  Only today, February 17, did ATL's office manager find at its door an envelope containing the Subpoena and an appearance check.

*See* Korzenik Decl. ¶12.  Jowers' counsel claims to have sent the Subpoena to ATL by email and/or by social media.  ATL's principal, John Lerner, has been working from Massachusetts during the relevant period.  And the journalist who wrote the two articles about the Texas Litigation has been working remotely in Putnam County and has not been to the office during the relevant period.  Service was never properly made; and it would be defective in all events given that no appearance check not simultaneously delivered with the Subpoena as Rule 45 requires until today, on the literal eve of the scheduled deposition.

6. An Order *modifying the Subpoena* to the extent that it demands documents and disclosures of *proprietary and confidential information* regarding the ATL publisher's practices under Fed. R. Civ. P. 45(d)(2)(B)(i).  Kinney's company is an advertiser with ATL.  But that does not alter the fact that the two articles about the Texas Litigation do no more than report what the reported court rulings said and what the court docket shows.  A reading of the articles defeats the specious and overreaching premise of Jowers' counsel.

**Reporter's Privilege**: The Subpoena's demands are so expansive, blunderbuss and indiscriminate but in all events by their own terms they seek unpublished editorial and reportorial work-product and, therefore, protected by the reporter's privilege.  The production of such editorial materials would be an undue imposition upon the freedom of the press under the First Amendment of the U.S. Constitution, Article 8 of the Constitution of the State of New York, the statutory and common law of New York (*see, e.g.*, N.Y. Civ. Rights Law § 79-h), and/or other applicable law or rule of evidence protecting journalist newsgathering information and activities.  *See, e.g.*, *Gonzales v. National Broadcasting Co.*, 194 F.3d 29 (2d Cir. 1999) (Leval, J).  Any

need for the information is outweighed by the public interest in protecting the editorial work product and confidential information and sources of journalists and the news media. Significantly, the requests lack the particularity and clarity that would permit Jowers to meet the ***requisite particularized need*** that, among other things, must be shown in order to overcome the reporter's privilege.  The vague and overbroad requests are so expansive and lacking in particularity that they are designed to allow Jowers to "sift" through ATL's files in search of documents unknown to him that might theoretically be of undefined or speculative interest to his case.

### *Jowers Cannot Meet the Requirements of the Second Circuit's Gonzales Test or of New York's Shield Law Civil Rights Law § 79-h as to Non-Confidential Information*

We review here what the Second Circuit's *Gonzales* test requires when a litigant seeks to compel a non-party journalist or press entity to disclose both confidential and non-confidential news-gathering materials.

*Gonzales* is probably the most frequently cited authority on this issue in the lower Federal District Courts within the Second Circuit and by other Circuit Courts of Appeal as well.  The most frequently cited passage from *Gonzales* is its articulation of the purpose and foundation of the reporters' privilege. That passage is instructive on how the reporters' privilege test should be applied:

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to ***sift through press files*** in search of information supporting their claims.  The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties – particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation.  Incentives would also arise for press entities to clean out files containing potentially valuable information lest they incur substantial costs in the event of future subpoenas.  And permitting unrestricted court enforced

> access to journalistic resources would *risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government or private parties*.

*Id.* at 35 (emphasis added).  Judge Leval directly follows this statement of purpose with this conclusion:

> For these reasons, we reaffirm that the qualified privilege for journalists applies to nonconfidential, as well as to confidential information.

*Id.*  At least two important principles are to be drawn from the *Gonzales* Court's articulation of the special purpose of this Privilege:

> a. *No "Sifting" through Journalists' Files*: Parties should not be empowered by courts to "sift" through a journalist's files to see *if* there might be some possibly useful materials that will aid their claim.  *Gonzales*, 194 F.3d at 35; *see, e.g.*, *Sikelianos v. City of New York*, 05 CIV. 7673 RJS/JCF, 2008 WL 2465120 at *1 (S.D.N.Y. June 18, 2018) ("A litigant seeking nonconfidential materials will not be granted unfettered access to 'sift through [journalists] files in search of information supporting [his] claims,' because such access would undermine the public's perception of the press as an independent institution and foster the view that it is 'an investigative arm of the judicial system, the government, or private parties.'") (internal citations omitted; alterations in original).
>
> General and shotgun demands are a *benchmark of sifting* – or what some might call "fishing."  A set of demands that begins with "All x . . ."; "All y  . . . (which is exactly what we are dealing with Jower's demands here), is the telltale sign that the inquiring party does not know exactly what they are looking for – that they *do not yet know* what they might find.  They suspect that something interesting or relevant just might turn up.  But that is the essence of impermissible sifting.

       There must be ***particularized need***; not just a general contention that the files sought must be relevant because they are all "about" the subjects of a news report that overlap the subjects of the litigation. Generalized likely or generalized possible relevance will not do. The material to be disclosed must be specifically identified – enough to be able to show that it will be relevant to a ***"significant"*** matter in the case – one that could not be obtained by other means. *Gonzales*, 194 F.3d at 36 (emphasis added).

    b. ***The Recognized Harm to Journalism***: Second, the harm to journalism that the privilege expressly aims to deter is the prospect that the *journalist will be seen to be an investigative arm of litigants*. That prospect will *chill* any source who is contacted by a journalist. That prospect harms investigative journalism at its core. It is this judicially recognized harm that must be ***balanced*** against the interest that any litigant will naturally have in a journalist's work – an interest that must first be concretely identified. There could be no viable or meaningful privilege if general protests of likely relevance were to suffice. Any reporters' file is of general relevance. But the litigant's interest must be concretely identified before it is balanced against the harm to the journalist.

    ***Gonzalez Test as to Non-Confidential Materials***: With this purpose in view, the *Gonzales* test as to non-confidential materials requires a showing that "the materials at issue are of likely relevance to a *significant issue* in the case, and are not reasonably obtainable from other sources." *Id.* at 36 (emphasis added).

    ***Required Nexus to a "Significant Issue"***: Speculation about likely relevance must be attached to a "significant issue." That means that generalized statements of possible or likely

9

relevance will not suffice.  *See, e.g.*, *In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F. Supp. 2d 464, 469 (S.D.N.Y. 2013) ("*In re McCray*"), *citing Gonzales*, 193 F.3d at 36, and *Sikelianos*, 2008 WL 2465120 at *1.  And they should not suffice, since that can be said of most reporters' files.  There might be some good materials for a sparkling cross-examination; there might be some good observations about the parties that offer nice color commentary at a trial; or there might be some cumulative evidence that give further weight to a case.  Surely there will be something along those lines in most reporters' files.  But that kind of inquiry – that kind of sifting – is precisely what is prohibited.

*Balancing Test*:  The test is a species of "balancing" test since it attempts to assess and weigh the need of the litigant (relevance, significance and unavailability) against the harm and burden imposed on the non-party journalist.  The *Gonzales* Court points with approval to the "balancing" called for by the Third Circuit in *U.S. v. Culbertson*, 630 F.2d 139, 147 (3d Cir. 1980), a case which also cited with approval by the Ninth Circuit in *Shoen v. Shoen*, 5 F.3d 1289, 1295-96 (9th Cir. 1993).  The test requires "balancing the defendant's need for the material sought against the interest of the journalist in preventing production in a particular case."  *Id.*

It is not sufficient to contend that something in the file might provide some fodder for cross-examination; or that they might reveal *cumulative* proof; or that it might furnish color commentary or background.

Cases in this District that have followed *Gonzales* have consistently prohibited civil litigants "unfettered access to 'sift through [journalists'] files in search of information supporting [their] claims.'"  *Sikelianos v. City of New York*, No. 05 Civ. 7673 (RJS)(JCF), 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008).

In *Sikelianos*, Magistrate Judge Francis granted the Associated Press' ("AP") cross-

motion to quash a plaintiff's subpoena demanding unpublished, nonconfidential photographs from the non-party media organization. There, the plaintiff argued "that the [AP] photos *might* be utilized to refresh the recollection of witnesses who were on the scene [of the plaintiff's arrest]" because they "*might* expose a face, shield number, aggressive police activity, or other item(s) of interest or value." *Id.* (citation omitted; emphasis added). The plaintiff also argued that such photos were relevant to the issue of damages. *Id.*

The court rejected those arguments because the plaintiff had failed to show any alleged police conduct that the defendants disputed or were likely to dispute. *Id.* It opined that such "reasoning could apply to any photograph of the plaintiff's arrest; it is not sufficient to show a particularized need for the photos in AP's possession." *Id.* In other words, the plaintiff failed to overcome the reporters' privilege because there was no nexus between the particularized need for the photos and the "relevance to a significant issue in the case." *Id.*, *citing Gonzales*, 194 F.3d at 36.

Another Southern District court applying the *Gonzales* standard rejected efforts to obtain unpublished, non-confidential outtakes from a documentary about the Central Park Five. *In re McCray*, 991 F. Supp. 2d at 470. There, the subpoenaing Defendants offered a "laundry list of reasons" why the interview outtakes sought might be relevant as potential impeachment material. *Id.* at 470 n.2. But the court held that was "insufficient." *Id.* at 470.

Like the plaintiff in *Sikelianos*, the *In re McCray* defendants could not point to any particular interview or outtake that would provide the evidence they sought. *See id.* Like the plaintiff in *Sikelianos*, the defendants only made general claims that the outtakes were likely to contain relevant material. *See id.* And like the plaintiff in *Sikelianos*, even though defendants did show a particularized need for the outtakes, that factor was "not enough to overcome the

11

standard for relevance under *Gonzales*." *Id.* There was no nexus to a significant issue in the case.

The *In re McCray* court also found that the defendants failed to meet the second prong of the *Gonzales* test, which states that the requesting party must show that the materials sought are "not reasonably obtainable from other sources." *Id.*, *citing Gonzales*, 194 F.3d at 36. It held that where the defendants had already had the information they sought, "any statements contained in the outtakes would be cumulative" because the available material already provided impeachment material. *Id.* at 471.

***Jowers Fails To Provide Reasonable Notice, and His Subpoena Violates Rules 30 and 45***

"Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b); *see Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20-Misc-23, 2020 WL 4700910, at *2 (S.D.N.Y. Aug. 13, 2020) (citation omitted).

In addition, as of 2020, Rule 30 requires the serving party and the subpoenaed organization to "confer in good faith about the matters for examination" – "[b]efore or promptly after the notice or subpoena is served." Fed. R. Civ. P. 30(b)(6). The subpoena "must advise a nonparty organization of its duty to confer with the serving party." *Id.*

A subpoena that "fails to allow a reasonable time to comply" must be quashed. *See* Fed. R. Civ. P. 45(d)(3)(A)(i). *See also Angelo, Gordon & Co.*, 2020 WL 4700910, at *2 (four days' notice did not afford recipient of deposition subpoena with reasonable time to comply; subpoena quashed).

Here, Jowers' counsel claimed to have served the Subpoena on February 5 – less than two weeks before the noticed deposition date. *See* Korzenik Decl. ¶11. But the Subpoena was

not served personally, and Jowers' counsel appears to have mailed it not on February 5, but three days later. *See* Korzenik Decl. ¶13. The Subpoena appears to have been delivered to an "individual" at the building where ATL's offices are located on February 11. Korzenik Decl. ¶13. However, only on February 17 – one day before the scheduled deposition – did ATL's office manager find at the door of its offices an envelope which contained the Subpoena and a $45.00 check for the appearance fee required by Rule 45. Korzenik Decl. ¶13.

The Subpoena commands the physical appearance of an ATL representative in Manhattan on February 18. Yet due to the pandemic, ATL's principal John Lerner has been working from Massachusetts during the relevant period. Korzenik Decl. ¶14. And the journalist, Joe Patrice, who wrote the two articles about the Texas Litigation, also has been working remotely outside of New York City. *Id.*

Contrary to Rule 30(b)(6), Jowers' counsel did not advise ATL of any duty to confer with him "about the matters for examination." *See, e.g.*, Korzenik Decl. Ex. A. When ATL's counsel sought additional time to confer about the Subpoena's scope and ATL's anticipated objections, Jowers' counsel claimed a February 19 discovery deadline in his case precluded such an extension. Korzenik Decl. ¶8.

The Court should hold that Jowers' service of the Subpoena was unreasonable and defective, in violation of both Rule 30 and Rule 45. Jowers should not be permitted to give ATL such an abbreviated notice of an in-person deposition and document production amidst these circumstances. Nor should Jowers' counsel be permitted to impose on ATL the cost of evaluating the Subpoena under such time pressure, and moving to quash it – all because Jowers is on the eve of discovery closing in his case. Korzenik Decl. ¶8.

***Further Rule 45(d)(2)(B) Objections to Subpoena Document Demands***

**Production Unduly Burdensome**: The production of the records sought is unduly burdensome because providing such information to all third party litigants on any issue covered by ATL would overburden it and interfere with its ability to carry out its primary function as reporters and gatherers of news; moreover, the material sought cannot be located without the expenditure of unreasonable burden, time and/or cost, or it is not maintained in a manner that is subject to retrieval with reasonable cost and effort.  The fact that one of the parties to the Texas litigation is an advertiser in ATL does not change that burden.  Publishers are not information services for litigants.

**Subpoena Calls for Documents that Are Irrelevant and Not Necessary or Essential to the Captioned Litigation**: The subpoena calls for information that is not necessary or essential to the subject litigation; not relevant to any of the claims or defenses therein; and not designed or reasonably calculated to lead to or obtain relevant or admissible evidence.

**Information Is Otherwise Available; Other Avenues Must First Be Exhausted**: The information sought is available by other means without burdening ATL.  Jowers should first, and must first, exhaust other avenues of discovery before seeking these documents from ATL.  This threshold requirement is one of the several aspects of the Fed. R. Civ. P. 45(d)(1) duty that Jowers and his counsel owe to ATL.  Apparently, the deposition of Mr. Kinney in the Texas action is being conducted this week.

**Overbroad, Vague and Lacking in Reasonable Particularity**:  The requests as framed are overbroad, unreasonably vague and lacking in fair or reasonable particularity or specificity.

**Objection to Logging Privilege**: The Reporters' Privilege would be violated by any requirement that each communication with sources and editors, etc. be identified, along with its

date and its subject matter. It is precisely that information that is protected by the privilege. To provide such a list would permit an inquiring party to "sift" through a journalist's files to see if there might be something that might possibly be of interest to them. Materials requested are materials likely developed in the course of newsgathering and reporting which is the foundation for the assertion of the privilege. In this case, most of the document requests and deposition topics by their own terms constitute and include demands for protected news gathering materials. Hence, the *demands themselves* provide the foundation for the assertion of the reporters' privilege. In all events, a log would entail the disclosure of information about sources and reporting that the Privilege is precisely designed to protect. Significantly, the demands are also so expansive, vague, indiscriminate and lacking in reasonable specificity that no log could reasonably be prepared to address them. It would be extremely abusive and unfair to frame blunderbuss requests of the kind demanded here and then to demand a log. They have been so expansively and unreasonably framed as to make the preparation of a log unreasonably costly, time-consuming and wasteful.

**Disclosures from Parties to the Litigation:** Potentially responsive materials should be sought first from parties in the Texas case. That would be both fair and true whether or not the Reporters' Privilege applies.

## CONCLUSION

The Court should quash the Subpoena and award ATL its reasonable expenses and attorneys' fees incurred in responding to it, including on this motion.

Dated: New York, New York
February 17, 2021

        MILLER KORZENIK SOMMERS RAYMAN LLP

        By: <u>/s/ David S. Korzenik</u>
        David S. Korzenik
        dkorzenik@mkslex.com
        Terence P. Keegan
        tkeegan@mkslex.com
        Zachary M. Press
        tkeegan@mkslex.com
        1501 Broadway, Suite 2015
        New York, New York 10036
        Phone: (212) 752-9200

        *Attorneys for Breaking Media, Inc.*
        *dba Above the Law*