UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SUBPOENA ISSUED IN:<br><br>*MWK Recruiting, Inc. v. Jowers, et al.*,<br>pending in the U.S. District Court for the<br>Western District of Texas,<br>Case No. 1:18-cv-00444-RP | Misc No. 1:21-mc-00194-KPF |
| BREAKING MEDIA, INC.<br>dba ABOVE THE LAW,<br><br>       Petitioner,<br><br>    -against-<br><br>EVAN P. JOWERS,<br><br>       Respondent. | **DECLARATION OF JOHN LERNER IN SUPPORT OF PETITIONER'S MOTION TO QUASH NON-PARTY SUBPOENA** |

**JOHN LERNER** hereby declares pursuant to 28 U.S.C. § 1746:

1. I am the Chief Executive Officer of Petitioner Breaking Media, Inc., publisher of *AboveTheLaw.com* ("Petitioner" or "ATL").

2. I make this Declaration in support of ATL's Motion To Quash Respondent Evan P. Jowers' ("Respondent" or "Jowers") Subpoena. The Subpoena seeks documents (*20 categories*) and a deposition of ATL (*on 25 topics*). It called for compliance on February 18, 2021 at 12:00pm in Manhattan.

3. On December 22, 2020 ATL's Senior Editor Joe Patrice published an article about a ruling by Magistrate Judge Austin in the Texas Litigation, *MKS Recruiting, Inc. v. Jowers, et al.* (the "December Article", *see* Exhibit A to Declaration of David S. Korzenik dated March 4, 2021, ECF No. 15, at 20). The December Article reported on and quoted extensively from a ruling in the Texas Litigation. ATL had published an April Article (*see id.*, at 30) on an earlier ruling by Judge Austin. Both rulings were

reported by competing news outlets such as Law.com, Law360 and Bloomberg Law, *before* ATL published its two Articles.

4. **ATL's Contacts with Jowers' Attorney Robert Tauler:** The closing paragraphs of the December Article referred to a RICO litigation pending in California in which Jowers' counsel Robert Tauler was a defendant. Mr. Tauler did not like the fact that ATL referred to the RICO case or the way in which Joe Patrice wrote about it. That case too had been reported by other law news outlets *before* ATL's December Articles appeared. For example, an article dated September 18, 2020 on Law.com reported on the RICO case and a ruling by Judge Curiel. *See*, Greg Land, *Law Firm Must Face RICO Claims over Sex Pill Litigation 'Scheme,' Judge Rules: Texas-based Outlaw Laboratory and its lawyers filed dozens of lawsuits and threatened hundreds of small shopkeepers selling rival sex supplements, netting more than $1.1 million in settlements*, LAW.COM, (Sept. 18, 2020), https://www.law.com/dailyreportonline/2020/09/18/law-firm-must-face-rico-claims-over-sex-pill-litigation-scheme-judge-rules/.

5. Mr. Tauler emailed me and Joe Patrice repeatedly after the December Article appeared and complained about the reference to the sex supplements RICO case. He emailed us before the holidays, and we spoke after Christmas. We accommodated him by replacing our closing paragraph with a statement from his lawyer about the RICO case.

6. But even after ATL had made the requested adjustment to the December Article, Mr. Tauler continued to send us more emails about RICO case and related sex supplements cases and asking us to "write about" the subjects he suggested. Among those emails was a February 2, 2021 email that asked us to accept service of a Subpoena. Frankly, I thought we were now done with the matter, but when I went back to look at these emails,

2

I saw the one with the Subpoena. I contacted our attorney David Korzenik to address it. I sent Mr. Tauler an email on Friday, February 12 and told him that our attorney would be contacting him early the coming week. Mr. Korzenik contacted Mr. Tauler on Monday, February 15. When Mr. Tauler was unwilling to extend the February 18 deadline for compliance, Mr. Korzenik was forced to file a Motion To Quash on February 17.

7. What these numerous calls and emails from Mr. Tauler indicate is that he was more concerned about ATL's coverage of him. And the approach he now takes to ATL is more retaliatory than driven by a legitimate or substantial need for any particular or identified information that ATL might have.

8. Nothing that ATL reported in the December Article and the April Article had not already been reported by other law news media. Nothing that ATL reported in those Articles were not straight out of the public record – rulings by Judge Austin and public proceedings in California before Judge Curiel.

9. I understand that Mr. Tauler contends that the Articles are of interest because they might "interfere with the deliberative process" of the Texas Court. But the Texas Court knows about its own rulings. It would not possibly find a report of what it had ruled to interfere with itself. Likewise, the RICO case is a matter of public record.

10. **The Subpoena and the Way It Was Pressed on ATL and Our Counsel Imposed Needless Cost on Us**: Not only was the amount of information demanded on such short notice beyond difficult, but the Subpoena sought ATL's editorial files on three of its Articles – materials and information shielded by the Reporter's Privilege, which any

news organization would consistently, and with rare exception, seek to protect. The timing and character of service is itself instructive.

11. It was not until February 17, 2021 that ATL actually received the hard copy of the Subpoena with the required check that Mr. Tauler had not mailed from California until February 8. Our office manager found it outside of the office door on February 17. That was the same day that we filed our Motion To Quash the Subpoena.

12. We checked the tracking information on the envelope. The envelope was sent by certified regular U.S. Mail. While the shipping label and office stamp was created at 9:08pm on February 4; it was not received or "accepted" at the USPS Los Angeles U.S. Post Office until late on February 8. The tracking information also states that the mailed envelope was "delivered to an individual" at 611 Broadway on February 11. Clearly it was not sent upstairs to our offices until much later, so that our office manager found it on the floor in front of the office door on February 17. The envelope was not sent by Express Mail or by special delivery.

13. The approach taken by Respondent forced on us the costs of a needless fire drill with motion practice that could have been less demanding and costly. The justification for demanding ATL's files and deposition remains obtuse and inadequately justified.

I affirm the truth of the statements herein under penalty of perjury.

_____

John Lerner

Dated: March 4, 2021
       Gloucester, MA