UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SUBPOENA ISSUED IN:<br><br>*MWK Recruiting, Inc. v. Jowers, et al.*,<br>pending in the U.S. District Court for the<br>Western District of Texas,<br>Case No. 1:18-cv-00444-RP | Misc No. 1:21-mc-00194-KPF |
| BREAKING MEDIA, INC.<br>dba ABOVE THE LAW,<br><br>        Petitioner,<br><br>   -against-<br><br>EVAN P. JOWERS,<br><br>        Respondent. | **DECLARATION OF DAVID S.**<br>**KORZENIK IN SUPPORT OF**<br>**PETITIONER'S MOTION TO QUASH**<br>**NON-PARTY SUBPOENA** |

**DAVID S. KORZENIK** hereby declares pursuant to 28 U.S.C. § 1746:

1. I am a partner in the law firm Miller Korzenik Sommers Rayman LLP, attorneys for Petitioner Breaking Media, Inc., publisher of *AboveTheLaw.com* ("Petitioner" or "ATL").

2. I make this Declaration in support of ATL's Motion To Quash Respondent Evan P. Jowers' subpoena ("Subpoena" attached as Exhibit A), which seeks documents (*20 categories*) and a Fed. R. Civ. P. 30(b)(6) deposition of ATL (*on 25 topics*) calling for compliance on February 18, 2021 at 12:00pm in Manhattan. ATL also moves for reasonable attorneys' fees under Rule 45(d).

3. The purpose of this Declaration is twofold: a) to provide the relevant underlying documents and exhibits; and b) to describe our meet and confer efforts.

4. The two most significant ATL Articles reporting on the underlying litigation, *MKS Recruiting v. Jowers, et al.*, pending in the U.S. District Court for the Western District of

Texas (Case No. 1:18-cv-00444-RP) ("Texas Litigation") are attached as Exhibits A and B to the Subpoena. *See* Exhibit A to Declaration, ECF No. 15-1, at 20; 30 (the "Articles"). The Articles will quote from two rulings in the Texas Litigation. On information and belief, both rulings were reported first by competing news outlets, Law.com, Law360 and Bloomberg Law.

5. ***Initial Contacts with Respondent Jowers' Counsel; And the Imposition of Needless Initial Motion Practice without Proper Time or Meet & Confer***: I contacted Robert Tauler, Counsel for Respondent Jowers, for the first time by telephone on President's Day, Monday, February 15, 2021 to discuss the Subpoena and to initiate meet and confer discussions – discussions that might have either avoided the need for this motion or at least narrowed it. We both understood that Fed R. Civ. P. 30(b)(6) requires meet and confer discussions in advance of motion practice. So too does accepted practice under Rule 45 and under many individual judges' rules.

6. On the February 15 call with Mr. Tauler, I inquired about the nature of the Texas Litigation and about the discovery needs in that case. He described the nature of the case as he saw it; and I noted the Reporter's Privilege issue that needed to be assessed at least as it related to a substantial portion of the Subpoena demands.

7. I also told Mr. Tauler that I would discuss the issues with ATL; find out what relevant information, if any, ATL might have in its possession; and what was at stake. We agreed that after I spoke with ATL, I would then speak further with Mr. Tauler.

8. ***Request for Extension of Time in Which to Move to Quash***: During the February 15 call, I requested an extension of time in which to make ATL's Motion To Quash so that a Fed. R. Civ. P. 30(b)(6)-compliant "meet and confer" could be completed, and to avoid

2

motion practice or at least narrow its scope. The Subpoena called for a deposition on Thursday, February 18 – only three days after our initial phone call. So, unless ATL's time to respond were extended, ATL would need to move to quash the Subpoena by February 17. Mr. Tauler seemed amenable to that and asked me to send a stipulation which he would consider. I prepared and sent Mr. Tauler the Stipulation the same day, February 15. A copy of the Stipulation and accompanying February 15 email is attached as Exhibit B.

9. On February 16 at 3:13pm, Mr. Tauler emailed me to say that he would *not* agree to extend any time. He said that his discovery cut-off in the Texas Litigation was Friday, February 19. Mr. Tauler wanted to go ahead with his Rule 30(b)(6) deposition of ATL on Thursday, February 18 – one day before his discovery cut-off.

10. That meant that ATL would have to move to quash Respondent's Subpoena by February 17 – one day before the February 18 deposition date. But it also meant that ATL would have to do so without having been allowed a reasonable time to meet and confer with Mr. Tauler as required by Rule 30(b)(6). That gave me about 24 hours in which to prepare and file a Motion To Quash.

11. The Court has since permitted time to amend the initial papers, but the prior motion was a needless expense and loss of time that Respondent should not have imposed on Petitioner ATL. The discovery cut-off was not a reasonable basis for compelling ATL to file a motion to quash: If ATL made the motion to quash, the February 19 date would pass without discovery; and if he extended ATL's time, the February 19 date would likewise pass without discovery. There was therefore no reasonable basis for declining an extension of time.

12. ***The Court Extends Time***: The Court extended ATL's time to supplement its papers on the Motion To Quash and thereby also to further meet and confer.

13. ***Further Meet and Confer with Respondent Jowers' Counsel:*** I therefore had further discussions with Mr. Tauler to either resolve or at least narrow the discovery issues between us.  I said that we would not waive the Reporter's Privilege – which most news organizations take seriously – as does ATL.  But ATL could consider answering some limited interrogatories on the Hong Kong Ad.  We would not submit to a wasteful deposition in which questions were posed that would violate the Reporter's Privilege.  I tried to determine if there were any valid or legitimate grounds for any of the discovery sought.

14. Respondent's counsel could not offer or describe any reasonable grounds for permitting such discovery or for our accepting the cost and burden of providing it.  Rather, he continued to press the idea that the articles interfered with the Court's "*deliberative process.*"  This rationale made no sense at all in view of the substance of the articles at issue.  They simply reported the rulings of the Texas District Court and the proceedings of the California District Court.

15. As a compromise, ATL offered to provide narrow discovery regarding the Hong Kong Ad in the form of focused written interrogatories.  But that did not seem to offer a path that would resolve the matter.

16. Mr. Tauler insisted on his theory that discovery of ATL was justified because the articles were designed to "interfere" with the Texas Court's "*deliberative process."*  That continued to make no sense.  The Texas Court already knew about its own rulings which is all that is reported in ATL's December and April Articles.  To the extent that there is a

4

brief reference to Mr. Tauler's California RICO case, that too is part of the public record. It was not new to anyone; it had already been published *before* ATL ever referenced it in article by other legal news outlets such as Law.com in September 2020. *See* Declaration of John Lerner dated March 4, 2021, ECF No. 14, ¶4.

17. Mr. Tauler speculated that Kinney must have been a source for the three articles and that would somehow impugn Kinney in some *useful and material* way in his Texas case. But the Texas case is a "trade secrets" "commercial confidence" case and a breach of contract case, as Mr. Tauler described it to me. And none of these articles have anything to do with any trade secret by any stretch of the imagination. Mr. Tauler in our discussions responded that if it has no bearing on trade secrets, it might as to breach of contract. But any reading of the three editorial pieces would not conceivably suggest anything about any breach of contract by anyone. Two articles describe court rulings in the Texas case and the Barnes article is critical of some distasteful and off-putting statements by recruiter Harrison Barnes about how women should or should not dress for interviews. Again, nothing to do by any stretch with any trade secrets or any theoretical breach of contract. Mr. Tauler's rationale was far-fetched and would not meet the showing that is required to break a Reporter's Privilege.

18. ***Meet and Confer Regarding the Sponsored Content (The Kinney Hong Kong Ad):*** I noted that sometimes "sponsored content" is editorially controlled and may then be subject to a Reporter's Privilege. In this case the Hong Kong item was an ad placed, paid for and written by Kinney Recruiting. We would not assert a Reporter's Privilege as to such advertising that is controlled by the advertiser. We would, however, per Rule 45 protections, oppose production of information about the ad *unless* Jowers can show how

it has some rational connection with a claim or material issue in the Texas Litigation. In our discussions, Mr. Tauler did not proffer grounds that would justify his imposing the costs of a deposition or production on ATL. That burden is unfairly imposed on ATL and the effort appears to be a retaliatory effort to get back at ATL for its reference to the RICO sex pills case coverage which Mr. Tauler did not like; but which ATL accommodated him on.

19. Our meet and confers led to the conclusion that the motion would need to be supplemented. (We are submitting amended and updated papers so that the Court does not need to refer to the prior set of motion papers, ECF Nos. 1-3.)

20. Petitioner ATL should not have to carry the cost of this or the prior motion practice.

21. ***Inadequate and Untimely Service of the Subpoena:*** The Subpoena appears never to have been properly served on ATL. ATL reviewed the U.S. Postal Service tracking history of the envelope, attached as Exhibit C.

22. The USPS Tracking History shows the mailed envelope's progress: The shipping label was created on February 4, 2021; but the envelope was only "accepted" at the Los Angeles Post Office on February 8 at 9:13pm; it "departed" from the USPS Regional Destination Facility in New York on February 11 at 2:00am; and was delivered to an "individual" at 611 Broadway on February 11 at 8:47am. On information and belief, that delivery was left with the doorman of the building who did not drop it off at ATL's offices until sometimes after the ATL office manager had left the office on February 12 when she was present. The office manager saw no envelope until February 17 when she was present on her return to the office that day. That is not service. And it is not timely service.

**Wherefore,** Petitioner respectfully requests that the Court grant its Motion To Quash in all respects; together with costs and reasonable attorneys' fees under Fed. R. Civ. P. 45 and such other and further relief as the Court deems proper.

I affirm the truth of the statements herein under penalty of perjury.

/s/David S. Korzenik

David S. Korzenik

Dated: March 4, 2021
   New York, New York