# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **MWK RECRUITING, INC.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**EVAN P. JOWERS, YULIYA VINOKUROVA, ALEJANDRO VARGAS, and LEGIS VENTURES (HK) COMPANY LIMITED (aka Jowers / Vargas),**<br><br>**Defendants.** | **Civil Action No. 1:18-cv-00444** |
| **EVAN P. JOWERS**<br><br>**Counterclaimant,**<br><br>**v.**<br><br>**MWK RECRUITING, INC., ROBERT E. KINNEY, MICHELLE W. KINNEY, RECRUITING PARTNERS GP, INC., KINNEY RECRUITING LLC, COUNSEL UNLIMITED LLC, and KINNEY RECRUITING LIMITED**<br><br>**Counter-defendants.** | |

**NOTICE OF SUBPOENA OF ABOVE THE LAW**

To: MWK RECRUITING INC. (also known as COUNSEL HOLDINGS INC.), ROBERT E. KINNEY, MICHELLE W. KINNEY, RECRUITING PARTNERS GP, INC., KINNEY RECRUITING LLC, COUNSEL UNLIMITED LLC, and KINNEY RECRUITING LIMITED, by and through their attorneys, Tristan C. Loanzon, Esq., Loanzon LLP, 1345 Avenue of the Americas, 2nd Floor, New York, NY 10105, tristan@loanzon.com; Raymond W. Mort, III, The Mort Law Firm, PLLC, 100 Congress Avenue, Suite 200, Austin, Texas 78701, raymort@austinlaw.com; and Robert E. Kinney, 824 W. 10th Street, Suite 200, Austin, Texas 78701, robert@kinneyrecruiting.com

Please take notice that the attached Subpoena to Testify at a Deposition in a Civil Action is being served upon Above the Law (c/o Breaking Media, Inc.).

DATED: February 2, 2021

TAULER SMITH LLP

By: *_/s/ Robert Tauler_*

Robert Tauler, Esq.
Texas State Bar No. 24122095
rtauler@taulersmith.com
Tauler Smith LLP
100 Congress Ave., Suite 2000,
Austin, TX 78701
Telephone: (512) 456-8760

**COUNSEL FOR DEFENDANT AND COUNTERCLAIMANT EVAN P. JOWERS**

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

MWK RECRUITING, INC.
*Plaintiff*
v.
EVAN P. JOWERS, YULIYA VINOKUROVA, ALEJANDRO VARGAS, and LEGIS VENTURES (HK) COMPANY LIMITED (aka Jowers / Vargas)
*Defendant*

Civil Action No. 1:18-cv-00444

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Above The Law
c/o Breaking Media, Inc., Attn: John Lerner
611 Broadway, Suite 907D, New York, New York 10012
*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Attachment A

| Place: Planet Depo<br>77 Water Street, Suite 800<br>New York, NY 10005 | Date and Time:<br>February 18, 2021; 12 noon (Eastern) |
|---|---|

The deposition will be recorded by this method: Stenographically and Videographically

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Attachment B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: February 1, 2021

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

OR

*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Evan P. Jowers, who issues or requests this subpoena, are:

Robert Tauler, Tauler Smith LLP, 626 Wilshire Blvd, Ste 510, Los Angeles, CA 90017; rtauler@taulersmith.com; 213-927-9270

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 1:18-cv-00444

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named individual as follows: ____________
______________________________________________
______________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

Print Save As... Add Attachment Reset

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

## DEFINITIONS

1. The terms "YOU" or "YOUR" or "RESPONDING PARTY" refers to the Responding Party, Breaking Media, Inc., as well as subsidiaries and affiliates such as Above the Law, as well as agents, employees, officers, representatives, consultants, experts or other persons acting on behalf of RESPONDING PARTY or under its control, directly or indirectly.

2. The term "KINNEY" shall mean Robert Kinney, including any aliases, agents, attorneys, employees, officers, representatives, or other persons acting on behalf of KINNEY, either directly or indirectly. .

3. The term "KINNEY ENTITIES" shall refer to the recruiting firm generally known as Kinney Recruiting as well as various companies which it has operated under, including Counsel Holdings, Inc., Counsel Unlimited LLC, Kinney Recruiting Ltd., Kinney Overseas, Ltd. MWK Recruiting, Inc., Kinney Recruiting LLC, Recruiting Partners GP, Inc., Recruiting Partners LP, Kinney Recruiting LP and any other entity controlled of managed by ROBERT KINNEY from which YOU have been provided legal recruiting services.

4. The term "JOWERS" means Evan P. Jowers, including his employees, associates, partners and legal representatives.

5. The term "JOWERS ENTITIES" shall mean Jowers Vargas and Legis Ventures.

6. The term "JOWERS LITGATION" shall mean the matter of MWK Recruiting, Inc. v. Jowers, pending in the Western District of Texas (Case No. 1:18-cv-00444), including all appeals and related lawsuits between the KINNEY ENTITIES and JOWERS.

7.     The term TAULER shall mean counsel for JOWERS in the JOWERS LITIGATION, Robert Tauler, Esq. and Tauler Smith LLP.

8.     The term "DECEMBER 2020 PIECE" shall refer to the December 22, 2010 blog post published on your website, www.abovethelaw.com titled "Judge Writes, 'To Say That This Case Is Trouble Is Like Saying 2020 Has Been Difficult" attached hereto as **Exhibit A**.

9.     The term "APRIL 2020 PIECE" shall refer to the article YOU published on April 29, 2020 titled "Kirkland & Ellis Ripped In Blistering Benchslap" attached hereto as **Exhibit B**.

10.    The term "BARNES PIECE" shall refer to the article "Legal Recruiter Fails To Understand Hiring Process, Basic Social Conventions" originally published on YOUR website abovethelaw.com or around March 13, 2013, a version of which is attached as **Exhibit C**.

11.    The term "HONG KONG PIECE" shall refer to the article titled "Kinney's Evan Jowers Now Permanently Based In Hong Kong" originally published on YOUR website abovethelaw.com or around June 17, 2015, a version of which is attached as **Exhibit D**.

12.    The terms "PERSON" or "PERSONS" shall include a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or entity of any sort.

13.    The terms "COMMUNICATION" or "COMMUNICATIONS" shall mean any transmission of information of any sort whatsoever by one or more PERSONS to one or more PERSONS and/or between one or more PERSONS, by any means whatsoever, including but not limited to text messages, emails, chat software such as slack or gmail chat, phone logs, and notes of conversations.

14.    The terms "REFERRING" "RELATE," "RELATING," or "RELATED," as used herein shall mean, in addition to the customary and usual

meaning of those words, constituting, mentioning, reflecting, referring, embodying, identifying, concerning, discussing, memorializing, describing, summarizing, or pertaining to the subject matter of the Request.

15. Any defined term, whether capitalized or not, shall have the meaning given in the definition.

**TOPICS FOR DEPOSITION**

1. COMMUNICATIONS between YOU and KINNEY RELATING to the JOWERS LITIGATION.

2. COMMUNICATIONS between Joe Patrice and KINNEY RELATING to the JOWERS LITIGATION.

3. COMMUNICATIONS between YOU and KINNEY RELATING to the DECEMBER 2020 PIECE.

4. COMMUNICATIONS between Joe Patrice and KINNEY RELATING to the DECEMBER 2020 PIECE.

5. COMMUNICATIONS between Joe Patrice and KINNEY related to JOWERS, from December 16, 2016 to the present.

6. Any and all independent research conducted by YOU regarding the JOWERS LITIGATION.

7. Any and all independent research conducted by Joe Patrice regarding the JOWERS LITIGATION.

8. All research conducted to support the statements made in the DECEMBER 2020 PIECE.

9. All facts supporting YOUR decision to publish the DECEMBER 2020 PIECE.

10. All of the reasons YOU did not attempt to contact JOWERS or TAULER prior to publishing the DECEMBER 2020 PIECE.

11.   All COMMUNICATIONS between Joe Patrice and any third party REFERRING to the JOWERS LITIGATION from December 16, 2016 to the present.

12.   YOUR investigation and publication of the APRIL 2020 PIECE.

13.   YOUR investigation and publication of the BARNES PIECE.

14.   YOUR understanding of the defamation lawsuit between KINNEY and Harrison Barnes that was pending when YOU published the BARNES PIECE.

15.   YOUR decision to remove the "HONG KONG PIECE" from YOUR website.

16.   Who decided to remove the "HONG KONG PIECE" from YOUR website.

17.   The removal of any content from YOUR website relating to JOWERS after December 16, 2016.

18.   All compensation provided by the KINNEY ENTITIES to YOU from January 1, 2017 to the present.

19.   All offers of compensation or the offer of any other benefits made by KINNEY to Joe Patrice in exchange for publication of content on YOUR website.

20.   The process by which YOUR editors select content to publish.

21.   The process by which YOU decide to remove content from YOUR website.

22.   Whether KINNEY has ever requested that you remove content from YOUR website.

23.   Whether YOU complied with KINNEY's request.

24.   The reasons why YOU complied with KINNEY's request.

25.   YOUR investigation regarding the KINNEY LITIGATION before removing content from YOUR website.

**ATTACHMENT B**

**DEFINITIONS**

1. The terms "YOU" or "YOUR" or "RESPONDING PARTY" refers to the Responding Party, Breaking Media, Inc., as well as subsidiaries and affiliates such as Above the Law, as well as agents, employees, officers, representatives, consultants, experts or other persons acting on behalf of RESPONDING PARTY or under its control, directly or indirectly.

2. The term "KINNEY" shall mean Robert Kinney including any aliases, agents, attorneys, employees, officers, representatives, or other persons acting on behalf of KINNEY, either directly or indirectly.

3. The term "KINNEY ENTITIES" means any and all entities owned by or controlled by Robert E. Kinney and/or Michelle W. Kinney, including without limitation, including Counsel Holdings, Inc., Counsel Unlimited LLC, Kinney Recruiting Ltd., Kinney Overseas, Ltd. MWK Recruiting, Inc., Kinney Recruiting LLC, Recruiting Partners GP, Inc., Recruiting Partners LP, Kinney Recruiting LP and any other entity controlled of managed by ROBERT KINNEY from which YOU have been provided legal recruiting services.

4. The term "JOWERS" means Evan P. Jowers, including his employees, associates, partners and legal representatives.

5. The term "JOWERS ENTITIES" shall mean Jowers Vargas and Legis Ventures.

6. The term "JOWERS LITGATION" shall mean the matter of MWK Recruiting, Inc. v. Jowers, pending in the Western District of Texas (Case No. 1:18-cv-00444), including all appeals and related lawsuits between the KINNEY ENTITIES and JOWERS.

7.      The term TAULER shall mean counsel for JOWERS in the JOWERS LITIGATION, Robert Tauler, Esq. and Tauler Smith LLP.

8.      The term "DECEMBER 2020 PIECE" shall refer to the December 22, 2010 blog post published on your website, www.abovethelaw.com titled "Judge Writes, 'To Say That This Case Is Trouble Is Like Saying 2020 Has Been Difficult" attached hereto as Exhibit A.

9.      The term "APRIL 2020 PIECE" shall refer to the article YOU published on April 29, 2020 titled "Kirkland & Ellis Ripped In Blistering Benchslap" attached hereto as Exhibit B.

10.     The term "BARNES PIECE" shall refer to the article "Legal Recruiter Fails To Understand Hiring Process, Basic Social Conventions" originally published on YOUR website abovethelaw.com or around March 13, 2013, a version of which is attached as Exhibit C.

11.     The term "HONG KONG PIECE" shall refer to the article titled "Kinney's Evan Jowers Now Permanently Based In Hong Kong" originally published on YOUR website abovethelaw.com or around June 17, 2015, a version of which is attached as Exhibit D.

12.     The terms "DOCUMENTS" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).  Documents include handwritten and/or typed notes and/or handwritten and/or typed entries in computer software, handheld devices, social media networks, emails, chat services, computer discs, personal diaries, business diaries, calendars and/or appointment calendars that evidence, refer or relate to the subject matter of each Request herein.

13.     The term "PERSON" refers to any natural person, firm, corporation, unincorporated association, partnership or other form of legal entity or governmental body, including its agents and representatives.

14.    The terms "CONCERNING" or "REFLECTING" or "RELATING TO" shall mean relating to, referring to, concerning, reflecting, describing, evidencing or constituting.

15.    "REQUESTS" shall mean these Requests for Production of Documents.

## INSTRUCTIONS

1.    These Instructions and Definitions require responses based upon the information available to Responding Party as well as its attorneys, representatives, investigators, and others acting on Your behalf or under Your control. These requests include any and all relevant documents within Your possession, custody, or control, including, without limitation, documents located in the personal files of any and all past and present directors, officers, agents, representatives, employees, attorneys, accountants, or others under Your control.

2.    A Document is within Responding Party's possession, custody, or control if You are able to obtain a copy with a reasonable expenditure of time, effort, expense, or influence. *See In re Wells*, 426 B.R. 579 (N.D. Tex. 2006) (citing *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992) (citing cases from various circuits)); *Southern Filter Media, LLC v. Halter*, 2014 U.S. Dist. LEXIS 120837, 14-15 (M.D. La. Aug. 29, 2014) ("Documents are deemed to be within the 'possession, custody or control' of a responding party if that party either has 'actual possession, custody or control' of the documents or if that party 'has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non- party to the action.' "(citing *Estate of Monroe v. Bottle Rock Power Corp.*, No. 03 2682, 2004 U.S. Dist. LEXIS 5737, 2004 WL 737463, at *10 (E.D. La. April 2, 2004)).

3.     If Responding Party is truly unable to produce a responsive document, state in writing why; if the inability to produce the Document or the property is because it is not in Your actual physical possession or the possession of a person from whom You could obtain it, state the name, address, and telephone number of any person You believe may have the original or a copy of any such Document.

4.     If Responding Party objects to any portion or any aspect of any Request, state the grounds of the objection with specificity and respond to the remainder of the Request as fully as the Responding Party is able.

5.     If Responding Party intends to object to any Request on the ground that it is overbroad or unduly burdensome for any reason, You must respond to that Request as narrowed to the least extent necessary, in Your judgment, to render it not overbroad or unduly burdensome and You must state specifically the extent to which You have narrowed that Request for purposes of Your limited understanding and You must provide the factual basis for Your conclusions. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (citation omitted); *Acme Truck Line v. Gardner*, 2014 U.S. Dist. LEXIS 164849, 4-5 (S.D. Tex. Nov. 25, 2014) ("For good cause to exist, the party seeking to limit the disclosure must make more than conclusory allegations that specific prejudice or harm will result if no protective order is granted."); *Gordon v. Greenville Indep. Sch. Dist.*, 2014 U.S. Dist. LEXIS 162729 (N.D. Tex. Nov. 20, 2014) ("A party resisting discovery must show specifically how each request is not relevant or otherwise [is] objectionable).

6.     If, in answering these Requests, Responding Party encounters any ambiguities when construing a Request, Instruction, or Definition, set forth the matter deemed ambiguous and the construction You used in responding.

7.     For any responsive Documents or tangible things that have been lost, destroyed, or withheld from production based on any ground, provide a written statement setting forth:

a.     the identity of the document(s);

b.     the nature of each document (e.g., letter, memorandum, chart);

c.     the identity of the person(s) who received copies of the document;

d.     the date of the document;

e.     a brief description of the subject matter of the document; and

f.     the circumstances of the loss or destruction and any fact, statute, rule, or decision upon which You rely in withholding the document.

8.     Where Responding Party asserts any privilege or immunity in responding or objecting to any of these requests and information is not provided on the basis of such assertion, identify the nature of the privilege or immunity. When any privilege is claimed, You must indicate, as to the information requested, whether: (i) any documents exist; or (ii) any communications took place; and (iii) also provide the following information for each such document in a "privileged documents log" or similar format:

a.     the type of document;

b.     the general subject matter of the document;

c.     the date of the document;

d.     the author(s) of the document;

e.     the addressee(s) and any other recipient(s) of the document; and

f.     the custodian of the document, where applicable.

9.     If responsive Documents are maintained in a file, the file folder itself is responsive  and should be produced along with the responsive Documents.

10.     All Documents requested are to be produced in the same file or other organizational environment in which they are or were maintained. For example, a

Document that is part of a file, docket, or other grouping, should be physically produced together with all other Documents from said file, docket, or grouping, in the same order or manner of arrangement as the original. Alternatively, as to each Document and thing produced in response hereto, You shall identify the Request for production in response to which the Document or thing is being produced.

11. These requests seek all responsive Documents in their original language and, if such original language is not English, these Requests also seek all English-language translations that may exist for any such Documents.

12. Each Document is to be produced along with all drafts, without abbreviation or redaction.

13. These Requests are continuing; You are required to supplement Your responses at least in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. All COMMUNICATIONS between YOU and KINNEY RELATED TO the original version of the DECEMBER 2020 PIECE, published on December 22, 2020.

2. All COMMUNICATIONS between YOU and KINNEY REFERRING or RELATED TO any and all changes you made to DECEMBER 2020 PIECE after its original publication.

3. All COMMUNICATIONS between YOU and any third party relating to the statements YOU made in the DECEMBER 2020 PIECE.

4. All DOCUMENTS demonstrating any investigation YOU conducted before pubishing the DECEMBER 2020 PIECE.

5. All COMMUNICATIONS between YOU and KINNEY RELATED TO the APRIL 2020 PIECE.

6.     All COMMUNICATIONS between YOU and KINNEY RELATED TO the BARNES PIECE.

7.     All COMMUNICATIONS between YOU and KINNEY from December 16, 2016 and the present related to JOWERS.

8.     All COMMUNICATIONS between YOU and KINNEY RELATED to the removal from your website of the HONG KONG PIECE.

9.     All COMMUNICATIONS between YOU and KINNEY from December 16, 2016 and the present related to the removal of content from YOUR website www.abovethelaw.com REFERRING or RELATING TO JOWERS.

10.    All COMMUNICATIONS between YOU and KINNEY from May 1, 2020 to the present RELATED TO TAULER.

11.    All COMMUNICATIONS between YOU and KINNEY which REFER or RELATE TO the JOWERS LITIGATION.

12.    All COMMUNICATIONS between YOU and any third party that REFER or RELATE to the JOWERS LITIGATION from December 16, 2016 to the present.

13.    All COMMUNICATIONS between Joe Patrice and any third party that REFER or RELATE to the JOWERS from December 16, 2016 to the present

14.    All emails sent to tips@abovethelaw.com from December 16, 2016 to the present REFERRING or RELATING to JOWERS.

15.    All emails sent to tips@abovethelaw.com from May 1, 2020 to the present REFERRING or RELATING to TAULER.

16.    All emails sent to tips@abovethelaw.com from December 16, 2016 to the present REFERRING or RELATING to the JOWERS LITIGATION.

17.    All texts sent to (646) 820-8477 from December 16, 2016 to the present RELATING TO JOWERS.

18.    All texts sent to (646) 820-8477 from May 1, 2020 to the present RELATING TO TAULER.

19.    All texts sent to (646) 820-8477 from December 16, 2016 to the present RELATING TO the JOWERS LITIGATION.

20.    DOCUMENTS sufficient to show how much money the KINNEY ENTITIES paid to YOU from January 1, 2017 to the present on a monthly, quarterly, and yearly basis.

# EXHIBIT A

MENU

Send Tips Advertise About

COURTS

# Judge Writes, ‘To Say That This Case Is Trouble Is Like Saying 2020 Has Been Difficult’

Things promptly go downhill for defendant from there.

By JOE PATRICE

Dec 22, 2020 at 2:14 PM

X

In fairness to Magistrate Judge Andrew Austin, this case and his 2020 have gone hand-in-hand.

Back in April, the judge had to benchslap Kirkland & Ellis into oblivion for not only refusing to comply with a simple third-party subpoena, but then having the audacity to demand fees for their trouble. They would not receive them, but the judge would note that "K&E should be embarrassed."

But Judge Austin only had to deal with K&E because the defendant claimed he didn't control a number of documents held by the recruiting company he otherwise seems to run. Last week, Judge Austin had to deal with the underlying discovery disputes involving the defendant and it was not pretty.

Indeed, "petty" was one word the judge used. "Unprofessional" was another.

So let's dive back into the world of *MWK v. Jowers*, a dispute between the various Kinney Recruiting entities[1] and former employee Evan Jowers, and see how things are going for Judge Austin.

X

After warning the defendant in May to make good faith efforts to comply with outstanding discovery requests, he instead fired his attorneys from DLA Piper and brought on Robert Tauler, whose firm appears

MENU

sensitive trade secrets to demanding 42 hours of testimony from the same person (MWK also filed two motions for protective orders decided in this order).

To the former point, Judge Austin did his best interpretation of the Chris Rock line, “This isn’t Dynasty, you work at the phone company”:

> If this were a patent suit, and Kinney and Jowers were the principals of rival chip manufacturers, these would be serious issues, deserving of a careful review and analysis. But this isn’t a patent suit, and Kinney and Jowers are not the principals of competing chip manufacturers—they’re the principals of **attorney recruiting firms** and the material at issue is, at best, marginally sensitive and is three years old. Given all of this, there is simply no good reason any court should have to delve into precisely how much of the material Kinney should be permitted to see. Instead, this is the very sort of issue attorneys working in good faith should work out.

It’s hard to imagine an industry as fast paced as attorney recruiting where the jobs are snapped up so quickly. But, sure, try to claim that emails about an employment benefits opening from 2017 are super-sensitive.

As for the depositions, Tauler filed motions for sanctions after the plaintiffs failed to appear at a pair of depositions. Except…

> revolves around the fact that there are five MWK entities that are parties to the case—MWK (the plaintiff), as well as Counsel Unlimited LLC, Kinney Recruiting LLC, Kinney Recruiting Limited, and Recruiting Partners GP, Inc. (all of whom Jowers sued in his counterclaim). Tauler has informed MWK that, in addition to deposing Kinney individually, he also intends to take a deposition of each entity, for which Kinney will be the corporate representative. Based on this, Tauler has unabashedly insisted that he is entitled to take six depositions, each seven hours in length. With no hint of shame, Tauler recounts that when the topic of the depositions was discussed, Kinney "requested an agreement by Jowers to limit the number of those depositions—by combining and consolidating them—so that, Kinney would not need to be deposed for a separate, seven-hours long day for each of the five named entities. Jowers's counsel told him . . . that no such agreement would be acceptable."

So far, we've got "petty and unprofessional" and "with no hint of shame." Are there any others in this 19-page order? Well, we have "absurdity," "abusive, and unwarranted," "failed to provide any colorable argument," "wholesale lack of any evidence," "goes too far, "pure speculation and conspiracy-theorizing," and "a prime example of how far beyond the pale Mr. Tauler has gone in his abuse of discovery in this case." It's safe to say things aren't going great for Jowers and Tauler. In fact, Judge Austin revisits Tauler's *pro hac vice* admission and demands that local counsel be added to supervise Tauler now that the original DLA Piper attorneys have withdrawn.

But that's not even the worst of it:

> And, most importantly, it has diverted the scarce judicial resources of this Court from disputes far more deserving of the Court's time. In May, Jowers and Tauler were warned that there would be consequences for continuing the conduct the Court was already seeing at that point. Rather than correcting things, they both doubled down and increased their abusive approach to this case. Accordingly, no later than **January 5, 2021**, both Jowers and Tauler shall file a written brief showing cause why they should not both be sanctioned for the costs they have caused the Plaintiff and Counter-Defendants to incur to respond to the baseless motions disposed of here.

Judges are generally too lenient when it comes to sanctioning bad behavior. There is a class of litigator who sees the process as an invitation to engage in wars of attrition that demean the whole system and they feel they can get away with it because no one wants to pull the trigger on sanctions. And maybe Judge Austin will stay his hand here too, but it's clear that if he did so it would be contingent on never having to resolve another dispute like this from the parties.

Maybe it's time for these folks to lay off the herbal male enhancement pills. It's possible that they're clouding their judgment. (UPDATE: We have been informed that no one associated with Tauler Smith is actually taking the male enhancement pills — the RICO case is about Tauler Smith's litigation *against* the sellers of the pills).

*(Full order on the next page...)*

X

'Petty and Unprofessional': Judge Threatens Sanctions in Legal Recruiter Trade Secrets Case [Texas Lawyer]

[1] By means of full disclosure, Kinney is a longtime advertiser on this site, but that doesn't really factor into our analysis here.

*Joe Patrice is a senior editor at Above the Law and co-host of Thinking Like A Lawyer. Feel free to email any tips, questions, or comments. Follow him on Twitter if you're interested in law, politics, and a healthy dose of college sports news. Joe also serves as a Managing Director at RPN Executive Search.*

1 2 NEXT »

**TOPICS**

Courts, Headhunters / Recruiters, Legal Ethics, Legal Recruiting

X

MENU

## Sign up for our newsletter.

Your email address* Subscribe

- [x] News (daily updates)
- [x] Partner Issues
- [x] Small Law Firms
- [x] In-House Counsel
- [x] Legal Technology
- [x] Law Schools
- [ ] ATL Trivia

We will never sell or share your information without your consent. See our privacy policy.

FROM THE ABOVE THE LAW NETWORK

Amid Disaster, Clients & Lawyers Align On Priorities: Top 5 Takeaways From The 2020 Clio Legal Trends Report
LAWLINE CLE

Industry Report: Survival or Evolution Report
ABOVE THE LAW AND ABACUSNEXT

Does The Cloud Offer More Security?
THOMSON REUTERS

How to Work Remotely With Full Matter and Case Management Functionality
ADVOLOGIX

X

Future of Commercial Contracts – 12/18 Webinar
ABOVE THE LAW AND LAWTRADES

Are You Helping Or Hindering Your Firm's Financial Performance? Quiz.
ABOVE THE LAW AND PWC

Driving Efficiency In Law Firm Accounting
ABOVE THE LAW & PWC

Where on Your Priority List is CLE? Tell us in a Flashpoll.
ABOVE THE LAW

26

## NEWSLETTER SIGNUP

Subscribe and get breaking news, commentary, and opinions on law firms, lawyers, law schools, lawsuits, judges, and more.

Submit

We will never sell or share your information without your consent. See our privacy policy.

MENU

ABOVE
THE LAW

ATL HOW APPEALING

BREAKING
DEFENSE

BREAKING
Energy

BREAKING
GOV

DEALBREAKER

FASHIONISTA

MedCityNews

© 2020 Breaking Media, Inc. All rights reserved. Registration or use of this site constitutes acceptance of our Terms of Service and Privacy Policy.

Do Not Sell My Personal Information

X



# EXHIBIT B

MENU

ABOVE THE LAW

Send Tips Advertise About

TALK TO THE RECRUITERS WHO TALK TO
DECISION MAKERS
AT TOP FIRMS EVERY DAY
KINNEY
RECRUITING

BIGLAW

# Kirkland & Ellis Ripped In Blistering Benchslap

Why do lawyers have to make things difficult?

By JOE PATRICE

Apr 29, 2020 at 11:47 AM

BENCHSLAP!

The most straightforward dispute in the legal recruiting world involves a recruiter jumping from one agency to another and along the way allegedly appropriates trade secrets and violates non-solicitation agreements. The former employer then — if not resolved amicably — has to file a lawsuit and lay out all the recruiting activity the ex-employee has been doing in breach of these obligations to the former firm. Pretty simple, right?

supposed new firm even though the domain name of the new company was *his name* and he signs all of their contracts. Given this intransigence, Kinney also subpoenaed Kirkland & Ellis, where the former employee allegedly placed people in breach of the obligations to Kinney. Also pretty simple.

K&E decided to make it difficult.

First, they objected to service. Then, after it was re-served, partner Will Pruitt objected to the subpoena, saying Kinney needed to get everything from the former employee. Kinney offered to narrow the subpoena but explained that they needed these relatively easy to procure documents because the defendant was not complying with discovery. After refusing to cooperate with a narrower request — twice — Kirkland also threatened to seek fees if Kinney filed a motion to compel. After one more, unanswered, plea for cooperation,

Kinney filed a motion to compel.

*Robert Kinney, Kinney Recruiting*

K&E replied by claiming to already be working on the request and asking that the motion be dropped. Kinney, having not been born yesterday, refused to drop the motion until K&E produced the documents. He even offered to drop the motion if K&E would just stipulate that they were trying to comply, but Pruitt refused to even do that and instead responded to the motion to compel.



line "petty, technical, [and] overly-argumentative" comes up:

> The Court could not be more disappointed with the manner in which K&E has handled this subpoena. Pruitt's petty, technical, overly-argumentative emails are a study in what is wrong with civil discovery in our court system today. The subpoena at issue sought a very small amount of uncontroversial information. None of it was privileged or confidential. MWK had served similar subpoenas on other "BigLaw" firms, all of which produced documents without objection. K&E's approach, however, was to evade, complain, and refuse. The fact that these actions were taken by a law firm makes it all the more frustrating. If anyone should know better than to act this way one would think it would be a law firm that touts itself as having "lawyers [who] employ innovative pragmatic strategies." There was not a single thing that K&E did to respond to this subpoena that was "pragmatic." Despite the countless hours Pruitt spent writing emails, K&E eventually produced the requested documents—but it forced MWK to file a motion to compel before it did so. Pruitt could have saved K&E, as well as MWK, thousands of dollars in attorney time by being cooperative up front. Instead, he chose to fight, forcing all parties, the Court included, to expend resources unnecessarily.

Yikes. This would be a scathing enough rebuke, but Kirkland & Ellis had already decided to ask for more having followed through on Pruitt's original threat to seek fees for responding to the motion to compel, which Magistrate Austin found particularly galling:

> But this is not the end of things. Having chosen the stubborn route, K&E also audaciously requests that the Court award **it** the attorney's fees it incurred in picking this fight. Recall that in the first week of February, Kinney offered to accept as sufficient exactly what K&E finally produced two months later. K&E refused, and instead forced Kinney to wait two months, write a dozen more emails, and then file a motion to compel. Kinney even repeated that same offer multiple times before he filed the motion. Yet K&E somehow thinks that it should


MENU

> request fees from K&E, as the Court would have been inclined to grant them. Because MWK did not, the Court will express its disapproval of K&E's actions only in words and not dollars. Either way, K&E should be embarrassed.

The lesson here is when a party is bending over backward to make compliance as painless as possible, just go ahead and comply. Entities like K&E always worry about the precedent they might set complying third-party subpoenas willy-nilly, but rather than fight it, that's all the more reason to reach out to a cooperative party and come up with some sort of stipulation to hand over non-privileged and non-confidential documents voluntarily.

It's pretty simple.

*(I'm throwing the whole opinion up on the next page...)*

---

[1] The party to the case is MWK Recruiting, but the dispute is about an employee of the more familiar Kinney Recruiting. By means of full disclosure, Kinney is a longtime advertiser on this site, but that doesn't really factor into our analysis here.

***Joe Patrice is a senior editor at Above the Law and co-host of Thinking Like A Lawyer. Feel free to email any tips, questions, or comments. Follow him on Twitter if you're interested in law, politics, and a healthy dose of college sports news. Joe also serves as a Managing Director at RPN Executive Search.***

1 2 NEXT »

MENU

ABOVE THE LAW

**TOPICS**

Benchslap, Biglaw, Kinney Recruiting, Kirkland & Ellis, Robert Kinney

Love ATL? Let's make it official.
Sign up for our newsletter.
Your email address*
Subscribe
News (daily updates)
Partner Issues
Small Law Firms
In-House Counsel
Legal Technology
Law Schools
Unprecedented
We will never sell or share your information without your consent. See our privacy policy.

**FROM THE ABOVE THE LAW NETWORK**

Driving Efficiency In Law Firm Accounting
ABOVE THE LAW & PWC

Guide for Surviving Your Remote Firm – 2/10 Webinar
ABOVE THE LAW AND PINGMAN TOOLS

How to Work Remotely With Full Matter and Case Management Functionality
ADVOLOGIX

1:00

Where on Your Priority List is CLE? Tell us in a Flashpoll.
ABOVE THE LAW

Future of Commercial Contracts – 12/18

Industry Report: Survival or Evolution Report

TM
TRADEMARK

Responding To Trademark Office

Are You Helping Or Hindering Your Firm's



ABOVE THE LAW

NEWSLETTER SIGNUP

Subscribe and get breaking news, commentary, and opinions on law firms, lawyers, law schools, lawsuits, judges, and more.

Submit

We will never sell or share your information without your consent. See our privacy policy.

Do Not Sell My Personal Information

Advertise About Newsletter

OUR SITES

BREAKING DEFENSE









ABOVE THE LAW

FASHIONISTA MedCity News

© 2021 Breaking Media, Inc. All rights reserved. Registration or use of this site constitutes acceptance of our Terms of Service and Privacy Policy.

# EXHIBIT C



Downtown La Law Group

Don't Pay Unless We Win. Top Injury Attorney Th

downtownlalaw.com

HEADHUNTERS / RECRUITERS, INTERVIEW STORIES, JOB SEARCHES, RACISM, SEXISM

# Legal Recruiter Fails To Understand Hiring Process, Basic Social Conventions

BCG Attorney Search CEO, Harrison Barnes, unintentionally demonstrates all the reasons he shouldn't be in the hiring business.

By JOE PATRICE

Mar 21, 2013 at 1:42 PM



*Harrison Barnes*

This is a humdinger of an article. Harrison Barnes, the Malibu-based CEO of BCG Attorney Search (and its various affiliated companies like LawCrossing and EmploymentCrossing), has penned what can only be described as a diatribe in which he viciously mocks various employees he's hired for their rank incompetence and embarrassing foibles.

He also elects to exhibit a panoply of racist, sexist, ageist, and ethnophobic attitudes along the way. It's a stunning degree of openness for someone involved in the human resources business.

But the unintentional comedy throughout the piece is the realization that a recruiter is functionally admitting that he has no idea how hiring works.



this premise:

> This was the culmination of three bad hires — one right after another — that elucidated to me that great interviewing skills are less important than how much people respect their jobs.

Let's keep that in mind as we progress.

Barnes kicks off its disturbing descriptions of his past hires with this one:

> She wore lots of make-up, was quite heavy, wore short skirts and had enormous breasts that could barely be contained by tank tops she wore. I might as well say it: She looked like a prostitute and very well may be one. When you watch the news and they show prostitutes standing in the street at night in short dresses walking up to cars, you never see their faces. When I saw her face I imagined that was what the prostitutes who walk up to cars look like.

Comparing a former employee to a streetwalker — nice. I think this is really unfair because, for the record, that's how everyone in L.A. over 40 looks. Zing! I'm not saying someone can't think these things.



publicly announce that he views some folks as haggard streetwalkers. The point, to the extent there's a point to this article, would be made just as well by saying, "she wore inappropriately casual dress for the office." Even in revealing clothing, this woman shouldn't be reduced to a prostitute.

But we're just getting started:

> One day I was sitting in my office and a young Pakistani man with a beard and wearing traditional Muslim dress (head piece and so forth) showed up for an interview that had been scheduled. It was 6:00 pm on a Friday night and I was the only one in the office. I looked up from whatever I was doing and saw him standing in the doorway of my office. It frightened the heck out of me and he appeared so out of sorts for the area I thought he might be there to kill me – or I might already be dead.

Lynndie England called and she wants her schtick back. "He appeared out of sorts for the area" sounds like it was ripped from a legal challenge to racial profiling. I guess he really wants folks to stay out of his beach community. Barnes goes on to describe this particular guy as a bit of a crank in the interview, but the problem here is that Barnes continues to revealingly draw the reader's



that the guy had terrible interview skills would suffice.

But then again, maybe it's Barnes — who, remember, makes his living trying to get people hired — who has terrible interview skills. From a different interview story in the same article:

> At some point in the interview, though, everything started to break down a bit. I expressed the fact that I thought she would do well and started being very nice to her. I was extremely frustrated about having had so many bad experiences trying to hire for this job. I started being a little bit informal – not in an inappropriate way – just a little informal. I think she took this the wrong way.
>
> "I do not believe in marriage," she told me. "I think that men and women are naturally inclined to be with multiple partners."

I fully believe some people are crizazzy, but when Barnes continues to recount wacky interview after wacky interview, it's worth asking, "Maybe the problem starts on the other side of the desk?" Remember when Barnes found the Muslim man's tone inappropriate for an interview? Well, Barnes went ahead and *hired* this woman



And this woman proceeds to not show up for work. And he keeps her on because:

> Normally, if someone did not show up for their first day of work – or acted as inappropriately as this woman did in the interviews, I would have nothing further to do with them. Here, however, this woman had an excellent resume and seemed to me the sort of person who would do very well in the job.

Hate to break it to a legal recruiter, but sometimes people lie on résumés.

Then he talks about an employee who dubbed himself — mid-interview — an "Ass Face," and a woman he sh*tcanned for bringing her drug-addicted son to the office. Probably inappropriate stories to be writing to the world, but whatever. Just remember where we started:

> This was the culmination of three bad hires — one right after another — that elucidated to me that great interviewing skills are less important than how much people respect their jobs.





MENU

# ABOVE THE LAW

Ass Face, a Retired Actress and a Horny 41-Year Old: Respecting Yourself and Your Job [BCG Attorney Search]

66
SHARES

TOPICS

BCG Attorney Search, Harrison Barnes, Headhunters / Recruiters, Interview Stories, Job Searches, LawCrossing, Racism, Sexism

Love ATL? Let's make it official. Sign up for our newsletter.

Your email address* Subscribe

- News (daily updates)
- Partner Issues
- Small Law Firms
- In-House Counsel
- Legal Technology
- Law Schools
- Unprecedented

We will never sell or share your information without your consent. See our privacy policy.





MENU

ABOVE THE LAW

Examining Covid-19-Related Insurance Litigation Trends
LAWLINE CLE

How to Work Remotely With Full Matter and Case Management Functionality
ADVOLOGIX

Future of Commercial Contracts – 12/18 Webinar
ABOVE THE LAW AND LAWTRADES

Industry Report: Survival or Evolution Report
ABOVE THE LAW AND ABACUSNEXT

Driving Efficiency In Law Firm Accounting
ABOVE THE LAW & PWC

Guide for Surviving Your Remote Firm – 2/10 Webinar
ABOVE THE LAW AND PINGMAN TOOLS

Are You Helping Or Hindering Your Firm's Financial Performance? Quiz.
ABOVE THE LAW AND PWC

Where on Your Priority List is CLE? Tell us in a Flashpoll.
ABOVE THE LAW

## NEWSLETTER SIGNUP

Subscribe and get breaking news, commentary, and opinions on law firms, lawyers, law schools, lawsuits, judges, and more.

ABOVE THE LAW

We will never sell or share your information without your consent. See our privacy policy.

Advertise About Newsletter

OUR SITES

BREAKING DEFENSE

DEALBREAKER

FASHIONISTA

MedCityNews

© 2021 Breaking Media, Inc. All rights reserved. Registration or use of this site constitutes acceptance of our Terms of Service and Privacy Policy.

Do Not Sell My Personal Information

# EXHIBIT D

 ACI ACI Scholarly Blog Index

# Kinney's Evan Jowers Now Permanently Based In Hong Kong

After a decade of 60+ trips to Hong Kong from his former Miami home, our Evan Jowers has finally taken the plunge and moved to Hong Kong on a permanent basis. Since '06, Evan has been head of Kinney's Asia recruiting and over that time Kinney has easily placed more US associates, counsels and partners at top tier US and UK firms than any other recruiting firm (we have also made many in-house placements). Evan will be living and working out of the Four Seasons Place in Central for the convenience of our clients. We have a conference room facility there for extra discreet meetings, although most of Evan's individual attorney client meetings will continue to be at Blue Bar (as has been the case over the years) down in the Four Seasons lobby.

Now that Evan is in Hong Kong full time, he will be more readily available to meet with and advise in-person our law firm and individual attorney clients in Hong Kong. He will also travel much more frequently to Shanghai, Beijing, Singapore, Tokyo and Seoul.

Evan will continue to work closely with US based clients as well.

As always, please feel free to reach out to asia@kinneyrecruiting.com to arrange a meeting or phone call with Evan Jowers, Robert Kinney (who is frequently in Asia) or any of our Asia team (Yuliya Vinokurova, Danielle Cyr, Rachel Huey, Jack Hopper and Peter Gutensohn). Even if you are not looking to start a job search for the foreseeable future and / or you are only interested in transferring with your own firm to Asia, we are always happy to discuss the Asia markets and individual career strategy.

**Copyright:**

© 2015 — Above the Law

**Publication** Above the Law
Behind the scenes look at world of law.

**LC Class** KF — United States

**Published** June 17, 2015

Above The Law

**Connect**  

ISSN 2374-1406

2018 © ACI Information Group

Version 1.10.3

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2021, I electronically served the foregoing document by email, pursuant to agreement of the parties, addressed as follows to counsel of record:

Robert E. Kinney, Esq.
824 W. 10th St., Suite 200
Austin, TX 78701
*robert@kinneyrecruiting.com*

Raymond W. Mort, III, Esq.
The Mort Law Firm, PLLC
100 Congress Ave., Suite 2000
Austin, TX 78701
*raymort@austinlaw.com*

Tristan C. Loanzon, Esq.
Loanzon LLP
1345 Avenue of the Americas, 2nd Floor
New York, NY 10105
*tristan@loanzon.com*

/s/Robert Tauler