UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SUBPOENA ISSUED IN: | Misc. No. 1:21-mc-00194-KPF |
| *MWK Recruiting, Inc. v. Jowers, et al.* pending in the U.S. District Court for the Western District of Texas, Case No. 1:18-cv-00444-RP | **ORAL ARGUMENT REQUESTED** |
| BREAKING MEDIA, INC. dba ABOVE THE LAW, | |
| Petitioner, | |
| -against- | |
| EVAN P. JOWERS, | |
| Respondent. | |

**AMENDED MEMORANDUM OF LAW OF PETITIONER BREAKING MEDIA, INC. IN SUPPORT OF ITS MOTION TO QUASH NON-PARTY SUBPOENA ON GROUNDS OF, AMONG OTHERS, REPORTER'S PRIVILEGE**

Dated: New York, New York
       March 4, 2021

MILLER KORZENIK SOMMERS RAYMAN LLP

By: /s/ David S. Korzenik
David S. Korzenik
dkorzenik@mkslex.com
Terence P. Keegan
tkeegan@mkslex.com
Zachary M. Press
zpress@mkslex.com
1501 Broadway, Suite 2015
New York, New York 10036
Phone: (212) 752-9200

*Attorneys for Breaking Media, Inc.*
*dba Above the Law*

## TABLE OF CONTENTS

Procedural Setting and Why the Supplemented Motion To Quash is Being Filed ......................1

The Subpoena Seeks Disclosures Regarding Four ATL Articles .................................................2

The Crux of the Reporter's Privilege Grounds to Quash ...........................................................7

Reporter's Privilege ................................................................. .................................................9

Jowers Cannot Meet the Requirements of the Second Circuit's Gonzales Test or of New
York's Shield Law Civil Rights Law § 79-h as to Non-Confidential Information....................10

Gonzales Test as to Non-Confidential Materials ......................................................................12

Required Nexus to a "Significant Issue"...................................................................................12

Balancing Test............................................................................................................................13

Jowers Failed To Provide Reasonable Notice, and His Subpoena
Violates Rules 30 and 45.............................................................................................................15

Further Rule 45(d)(2)(B) Objections to Subpoena Document Demands..................................16

CONCLUSION ...........................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,
  No. 20-Misc-23, 2020 WL 4700910 (S.D.N.Y. Aug. 13, 2020)................................................15

*Gonzales v. National Broadcasting Co.*,
  194 F.3d 29 (2d Cir. 1999) (Leval, J) ..............................................................................passim

*In re McCray, Richardson, Santana, Wise, Salaam Litig.*,
  991 F. Supp. 2d 464 (S.D.N.Y. 2013)........................................................................13, 14, 15

*Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993)..............................................................................13

*Sikelianos v. City of New York*,
  05 CIV. 7673 RJS/JCF, 2008 WL 2465120 (S.D.N.Y. June 18, 2018).................11, 13, 14, 15

*U.S. v. Culbertson*, 630 F.2d 139 (3d Cir. 1980).......................................................................13

**Statutes**

New York Civil Rights Law §79-h ..............................................................................4, 8, 9, 10

**Rules**

Fed. R. Civ. P. 30 ....................................................................................................7, 15, 16

Fed. R. Civ. P. 45 ..............................................................................................................passim

**Constitutional Provisions**

N.Y. State Constitution, Article 8 .................................................................................................9

U.S. Constitution, First Amendment ..............................................................................................9

**AMENDED MEMORANDUM OF LAW OF PETITIONER BREAKING MEDIA, INC.
IN SUPPORT OF ITS MOTION TO QUASH NON-PARTY SUBPOENA
ON GROUNDS OF, AMONG OTHERS, REPORTER'S PRIVILEGE**

**Petitioner Breaking Media, Inc.**, publisher of ***Above the Law*** ("ATL" or "Petitioner"),

by its attorneys, Miller Korzenik Sommers Rayman LLP, submits this Memorandum of Law in

support of its motion pursuant to FRCP 45 to quash a Subpoena issued to it by Respondent Evan

Jowers ("Jowers") from an action pending in the Western District of Texas entitled *MWK

Recruiting v. Jowers, et al.*, No. 1:18-cv-00444 (W.D. Tx.).

ATL moves to quash Respondent's Subpoena on grounds that:

a) the Subpoena violates the *Reporter's Privilege* under *New York Civil Rights Law §79-h* and under the *Federal Reporter's Privilege*, under *Gonzales v. Nat'l Broadcasting Co.*, 194 F.3d 29 (2d Cir. 1999), and all applicable state law including State and Federal Constitutions;

b) the Subpoena imposes undue burden and expense on a third-party that deserves the Court's protection under *FRCP 45(d) and 45(d)(2)(B)(ii)* (regarding protections due subpoenaed third-parties such as ATL; where a subpoena is needlessly burdensome and costly; seeks information that has only the most obtuse bearing on a pending litigation; where its objectives are retaliatory and unjustified; and the subpoena seeks privileged materials); and

c) the Subpoena was neither properly nor timely served on ATL: The Subpoena set compliance for **Feb. 18**. The discovery cut-off in Texas was **Feb 19**. The Subpoena was discovered on **Feb. 17** in a U.S. Mail envelope in front of ATL's offices with a check. According to the USPS tracking data, Respondent Jowers dropped off the U.S. certified mail envelope at a Los Angeles post office on **Feb. 8**. The envelope was delivered to an "individual" at 611 Broadway on **Feb. 11**. But no one at ATL received it until **Feb. 17**. A prior emailed copy was apparently sent on Feb. 2, but needless to say, it did not include the check required by Rule 45. *See* Declaration of John Lerner dated March 4, 2021 ("Lerner Decl."). Neither physical mail nor email service suffices, and in all events, it was not timely made.

***Procedural Setting and Why the Supplemented Motion To Quash is Being Filed:***

Petitioner ATL's Initial Motion To Quash (Dkt. 1) had to be filed in haste on February 17, 2021.

ATL's counsel, David Korzenik, contacted Respondent Jowers' counsel, Robert Tauler, on

Monday, Feb. 15 [1] to discuss the Subpoena and to see if the matter could be resolved or narrowed.  The expectation following that conversation was that the parties could stipulate to an extension of time to discuss the issues further.  But on Tuesday, Feb. 16, Mr. Tauler told Mr. Korzenik that he could not sign on to the stipulation because of his discovery cut-off of Feb 19.  We therefore filed our Motion to Quash on Feb. 17.

The Court extended our time to supplement our motion papers and stayed discovery obligations.  Dkt. 8.  The parties continued their discussions and entered into a Stipulation which was So Ordered by the Court.  Dkt. 12.  That Order allowed time for ATL to supplement briefing of its Motion if the matter could not be resolved.  The matter could not be resolved – though some issues were, perhaps, more defined.  Accordingly, ATL has updated its Motion briefing.

***The Subpoena Seeks Disclosures Regarding Four ATL Articles:*** The analysis of this Motion can be given practical focus in this way: Though the Subpoena seeks 1) production of many documents (*20 broad categories of documents*) and 2) a deposition of Petitioner ATL (*on 25 broad 30(b)6 topics*), they all seek disclosures from ATL about **four** articles [2] it published – two of which covered a judge's rulings in the pending Texas litigation.  The Texas litigation, *MWK Recruiting v. Jowers*, is a typical claim by a legal recruiter, MWK, owned by one Robert

---

[1] ATL had been in communication with Respondent Jowers' counsel Robert Tauler **before** the Subpoena was ever prepared or sent.  Mr. Tauler had called ATL to express his displeasure with the way in which he was referred to in ATL's article of December 22, 2020 about a ruling in the Texas lawsuit.  The December ATL article included a closing reference to a RICO lawsuit against Mr. Tauler pending in the Southern District of California before Judge Curiel.  See Declaration of John Lerner dated March 4, 2021.  ATL accommodated Mr. Tauler and made an adjustment to the article.  ATL concluded that the matter was done and that they had no need to further communicate with Mr. Tauler.  One of Mr. Tauler's subsequent emails which ATL did not read or send to counsel until later included a copy of the Subpoena.  When ATL's counsel, David Korzenik, reviewed the Subpoena, he contacted Mr. Tauler on Monday, February 15.

[2] A copy of the Subpoena is **Exhibit A** to the Declaration of David S. Korzenik dated March 4 , 2021 ("Korzenik Decl.").  Copies of two of the ATL articles are attached to the Subpoena as Exhibits A and B.  A reading of the two articles will be dispositive of this Motion.  They are straight reports of the public ruling.

Kinney, against an ex-employee who started his own competing legal recruiting company.  The Texas litigation would be of little likely interest, but for two court rulings that drew the immediate interest of Law.com, Law360, Bloomberg Law, and ATL.  The two rulings made unusually strong criticisms of the behavior of counsel.  ATL's articles appeared *after* those in the other legal publications.  *See* Lerner Decl. ¶3.

The four published articles at issue are the following:

1. ***December 2020 Article*** *about a Ruling in the Texas Litigation*: On December 22, 2020, ATL published an article about a ruling by Judge Austin in the Texas case.  The December Article was entitled: "*Judge Writes, 'To Say That This Case Is Trouble Is Like Saying 2020 Has Been Difficult'; Things Promptly Go Downhill for Defendant from There.*"  The article consists largely of quotations from Judge Austin's ruling – highly critical of Jowers and Mr. Tauler.  The closing paragraph of the December Article references another litigation, a RICO litigation against Mr. Tauler which is pending in the Southern District of California before Judge Curiel.  Mr. Tauler objected to this closing reference to him and his RICO case and it was adjusted by ATL to accommodate him.  The earlier version made a joking reference to Mr. Tauler and the male enhancement supplements that were the subject of the California RICO case.  *Law.com* had earlier covered Tauler's California RICO case in far more detail on September 18, 2020.  A copy of the September *Law.com* Article, entitled, *Law Firm Must Face RICO Claims Over Sex Pill Litigation 'Scheme,' Judge Rules*, is annexed as **Exhibit C** to the Declaration of David S. Korzenik.

2. ***April 2020 Article*** *about a Ruling in the Texas Litigation:* On April 29,

2020 ATL published an article about an earlier ruling in the Texas litigation entitled,

"*Kirkland & Ellis Ripped in Blistering Benchslap; Why do lawyers have to make*

*things difficult?*"  K&E had been a client of MWK/Kinney and apparently did

business with Jowers.  So MWK /Kinney sought disclosure from K&E about the

business the firm did with Jowers.  The article is largely an account of Judge Austin's

highly critical ruling regarding third-party K&E's response to the discovery demand

from MWK.  The April Article, like the December Article, was written by Joe

Patrice, a senior editor at ATL.

Both the April Article and the December Article appropriately disclosed: "By

means of full disclosure, Kinney is a longtime advertiser on this site…"

3. *May 2013 Article* about a legal recruiter, Harrison Barnes, who in a blog

inappropriately described how women should and should not dress for interviews.

The article is annexed to the Subpoena as Exhibit C (the "Barnes Article").  The ATL

May 2013 Article was critical of Barnes.

4. *Sponsored Content dated June 17, 2015* which was placed as an advertisement by

Kinney Recruiting in ATL with the heading, "Kinney's Evan Jowers Now

Permanently Based in Hong Kong."  After Jowers resigned from Kinney Recruiting,

the reference to Jowers was removed.  The ad no longer includes Jowers' name.

**Petitioner's Position on the Subpoena as to the Three ATL Articles**: As to the

*December Article*, the *April Article* and the *Barnes Article*, they are all editorial content of ATL.

And any reporting materials regarding those published articles are protected from disclosure by

the Reporter's Privilege both under the New York Shield Law (NY Civil Rights Law 79-h) and

under the Federal Reporter's Privilege as articulated by the Second Circuit in *Gonzales v. Nat'l*

*Broadcasting Co.*, 194 F.3d 29 (2d Cir. 1999) (Leval, J.).  We take the same position on these

first three articles that any news organization would take when third-parties seek discovery of its

editorial materials.  We assert the Reporter's Privilege.  Jowers cannot overcome any of the tests

that he must meet in order to overcome that privilege.  Those tests are described below.  ATL

does not have to disclose who its sources (if any) were, for any of its editorial articles – or who

were *not* its sources.

Jowers/Tauler speculate that Kinney must have been a source for the three articles, which

somehow would impugn Kinney in some useful *and material* way in the Texas case.  But the

Texas case is a "trade secrets," "commercial confidence" case and a breach of contract case.

And none of these articles have anything to do with any trade secret by any stretch of the

imagination.  Mr. Tauler, in discussions with ATL's counsel, responded that if it has no bearing

on trade secrets, it might as to breach of contract.  But any reading of the three editorial pieces

would not conceivably suggest anything about any breach of contract by anyone.  Two are

descriptions of court rulings in the Texas case and the Barnes article is an article about some

distasteful and offputting statements by a recruiter about how women should or should not dress

for interviews.  Again, nothing to do by any stretch with any trade secrets or any theoretical

breach of contract.  The effort is far-fetched and will not meet the showing that is required to

break a Reporter's Privilege.

**Petitioner's Position on the Subpoena as to the Sponsored Content (The Kinney Hong**

**Kong Ad):** Sometimes sponsored content is editorially controlled and may then be subject to a

Reporter's Privilege.  In this case the Hong Kong item was an ad placed and paid for by Kinney

Recruiting.  We do not assert a Reporter's Privilege as to such advertising that is controlled by

the advertiser.  We do, however, per Rule 45 protections, oppose production of information

about the ad *unless* Jowers can show how it has some rational connection with a claim or material issue in the Texas litigation.  In discussions with ATL's counsel, Mr. Tauler did not proffer grounds that would justify his imposing the costs of a deposition or production on ATL. That burden is unfairly imposed on ATL and the effort appears to be a retaliatory effort to get back at ATL for its reference to the RICO sex pills case which Tauler did not like; but which ATL accommodated him on.

If in his Opposition papers, Jowers can show some connection with a credible and material issue in the Texas litigation – that goes beyond sideshow cross-examination or color commentary, then ATL will agree to answer a set of *properly framed written interrogatories*. But we oppose sitting for a deposition in which questions aimed at privileged materials are wastefully tossed at ATL editors.  If there is anything to be disclosed, it must be identified specifically now and not after a disputed deposition in which the deposition resumes after more motion practice.

The reason that the Hong Kong Ad is not the proper subject of costly and pointless discovery from ATL is this: Kinney placed the Hong Kong Ad with ATL and can control its content.  When Jowers resigned from Kinney Recruiting, Kinney Recruiting would not be expected to keep up an online ad that promoted a non-employee who was no longer with the company.  It would not be appropriate in all events for a company to promote itself with the *name or likeness* of a person not associated with them.

If the fact of the removal is of any importance – which is hard to see – that fact is demonstrated by comparing the earlier version of the ad and the later version which removes the reference to Jowers.  Jowers already has that.  There is no mystery there and nothing improper about it.  And it has nothing to do with any breach of contract or trade secret.

***Rule 45 Is Not a Device for Securing Color Commentary at Trial or Peripheral Cross-Examination from a Non-Party*:** ATL should not be made to expend time or resources to provide color commentary for Jowers' trial.  If Jowers can show that he needs proof of the removal of the name from the ad for some material reason, then the most ATL should be burdened with is providing copies of the ad before and after and to authenticate them.  But again this appears to be color commentary which is not the proper fare of Rule 45.  Jowers' Subpoena is the kind of exploratory exercise that under Rule 45 courts "must" protect third-parties against.

***The Meet-and-Confers Between Counsel*:** Counsel for Respondent Jowers (Robert Tauler, Esq.) and for Petitioner ATL (David Korzenik, Esq.) had an obligation under Rule 30(b)(6) to meet and confer on the deposition's scope before any motions were made.  *See* Fed. R. Civ. P. 30(b)(6).  Rule 45 imports similar obligations.  Mr. Korzenik and Mr. Tauler conferred on several occasions in an effort to resolve or at least focus the issues.  ATL's counsel offered to provide narrow discovery regarding the Hong Kong Ad in the form of focused written interrogatories.  But that did not seem to offer a path that would resolve the matter.

Mr. Tauler insisted on a theory that seems more than far-fetched.  He proposed that discovery from ATL was justified because the articles were designed to interfere with the Texas Court's "deliberative process."  *See* Korzenik Decl. ¶¶14, 16.  That makes no sense.  The Court already knew about its own rulings which is all that is reported in the December and April Articles.  To the extent that there is a brief reference to Tauler's California RICO case, that too is part of the public record.  And it was not new to anyone: it had been published *before* ATL ever referenced it in article by other legal news outlets such as Law.com in September 2020.

***The Crux of the Reporter's Privilege Grounds To Quash*:**  There are many ***The Subpoena Seeks Disclosures Regarding Four ATL Articles*** granting this Motion to Quash.  But

here is the crux of the Reporter's Privilege issue: As a legal news outlet, ATL does not have to reveal who its sources *were* for its articles; or even who *were not* its sources.  *See* New York Civil Rights Law 79-h; *Gonzales v. Nat'l Broadcasting Co*., 194 F.3d 29 (2d Cir. 1999). [3] Jowers' *45 demands* seek in various repetitive ways to find out who ATL's sources were on the two articles about the Texas rulings.  They want all "communications between YOU and [Robert] Kinney relating to . . . the Jowers litigation," relating to ATL's "December Article," relating to ATL's "April article," etc.  There are many variations on the same inquiry – asking for ATL's files on its "investigation" of all the articles.  All of them indiscriminately demand documents from ATL's reporter's file.

The Reporter's Privilege bars Jowers from "*sifting*" through ATL's files to see "*if*" there might be some helpful or interesting documents that *might* support his case in Texas.  That is the essence of impermissible sifting and fishing.  It is exactly what the NY Shield Law and *Gonzales* prohibit.

Kinney is a principal of the plaintiff company, MWK Recruiting, in the Texas case.  And Jowers' counsel contends that Kinney was a source for the two ATL articles.  Why might that be relevant?  Jowers' counsel entertains the notion that the ATL articles were "*criminal*," in that they "*interfered with the deliberative process*" of the court in Texas by publishing the two articles about the Texas rulings.  *See* Korzenik Decl. ¶¶14, 16; Lerner Decl. ¶9.  That assertion is frivolous for a number of reasons.  But, the two facts that end the inquiry are these:

1) A simple reading of the two Articles shows that they reveal nothing more than what the Texas rulings said about Jowers and his counsel and about Kirkland & Ellis, and what

---

[3] To overcome the privilege, Jowers will have to show that he can identify with *particularity* the *specific* document(s) that he needs; he must show that he could not get it elsewhere; and he must show that it is material and essential to a defense or claim that he is making.  It cannot just be nice "color" or good cross in a trial.  *Gonzales*, 194 F.3d at 35.

happened in the case – as the Pacer docket reveals.  The two Articles consist largely of

block quotations from the Court rulings.  They are *not investigative pieces*; they just

report and comment on what the Court said and what happened on the docket; and

2) The rulings were already reported by other legal news outlets, including *Law.com*,

*Law360* and *Bloomberg Law* before ATL published its own report on the same rulings.

Hence, there was nothing revealed that was not already part of the court record; nothing revealed

that was not already previously reported by other legal news outlets; nothing that could possibly

have "interfered with the [Texas Court's] deliberative process."  *See* Korzenik Decl. ¶¶14, 16.

Most Courts know what they have said and how they have ruled.

And that means that the speculative premise of Jowers' counsel is not just frivolous; he is

hoping to use it as an excuse to "sift" through ATL's files to see if there *might* be *something* that

*could be* interesting to Jowers' case.  But the premise and rationale for such a "sifting" inquiry is

manifestly false.  The Court should reject it.  And the Subpoena's requests that seek information

about ATL news reporting should therefore be quashed.

**Reporter's Privilege:** The Subpoena's demands are expansive, blunderbuss and

indiscriminate.  And in all events *by their own terms* they seek unpublished editorial and

reportorial work-product and, therefore, are protected by the Reporter's Privilege.  In short the

demands are not just demands that might include reporters' material.  They explicitly demand

investigative and reporting materials.  The production of such editorial materials would be an

undue imposition upon the freedom of the press under the First Amendment of the U.S.

Constitution, Article 8 of the Constitution of the State of New York, the statutory and common

law of New York (*see, e.g.*, N.Y. Civ. Rights Law § 79-h), and/or other applicable law or rule of

evidence protecting journalist newsgathering information and activities.  *Gonzales v. Nat'l*

*Broadcasting Co.*, 194 F.3d 29 (2d Cir. 1999) (Leval, J).

Any need for the information is outweighed by the public interest in protecting the editorial work product and confidential information and sources of journalists and the news media. Significantly, the requests lack the particularity and clarity that would permit Jowers to meet the ***requisite particularized need*** that, among other things, must be shown in order to overcome the Reporter's Privilege. The vague and overbroad requests are so expansive and lacking in particularity that they are designed to allow Jowers to "sift" through ATL's files in search of documents unknown to him that might theoretically be of undefined or speculative interest to his case.

### *Jowers Cannot Meet the Requirements of the Second Circuit's* Gonzales *Test or of New York's Civil Rights Law 79-h as to Non-Confidential Information*

We review here what the Second Circuit's *Gonzales* test requires when a litigant seeks to compel a non-party journalist or press entity to disclose both confidential and non-confidential news-gathering materials.

*Gonzales* is probably the most frequently cited authority on this issue in the lower Federal District Courts within the Second Circuit and by other Circuit Courts of Appeal as well. The most frequently cited passage from *Gonzales* is its articulation of the purpose and foundation of the Reporter's Privilege. That passage is instructive on how the Reporter's Privilege test should be applied:

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to ***sift through press files*** in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties – particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation. Incentives would also arise for press entities to clean out

files containing potentially valuable information lest they incur substantial costs in the course of future subpoenas.  And permitting unrestricted court enforced access to journalistic resources would ***risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government or private parties***.

194 F.3d at 35 (emphasis added).  Judge Leval directly follows this statement of purpose with this conclusion:

> For these reasons, we reaffirm that the qualified privilege for journalists applies to nonconfidential, as well as to confidential information.

*Id.*  At least two important principles are to be drawn from the *Gonzales* Court's articulation of the special purpose of this Privilege:

a. ***No "Sifting" through Journalists' Files***: Parties should not be empowered by courts to "sift" through a journalist's files to see ***if*** there might be some possibly useful materials that will aid their claim.  *Gonzales*, 194 F.3d at 35; *see, e.g.*, *Sikelianos v. City of New York*, 05 CIV. 7673 RJS/JCF, 2008 WL 2465120 at *1 (S.D.N.Y. June 18, 2018) ("A litigant seeking nonconfidential materials will not be granted unfettered access to 'sift through [journalists'] files in search of information supporting [his] claims,' because such access would undermine the public's perception of the press as an independent institution and foster the view that it is 'an investigative arm of the judicial system, the government, or private parties.") (internal citations omitted; alterations in original).

General and shotgun demands are a ***benchmark of sifting*** – or what some might call "fishing."  A set of demands that begins with "All x . . ."; "All y  . . . (which is exactly what we are dealing with Jowers' demands here), is the telltale sign that the inquiring party does not know exactly what they are looking for – that they *do not yet know* what they might find.  They suspect that something interesting or relevant just

might turn up.  But that is the essence of impermissible sifting.

There must be ***particularized need***; not just a general contention that the files sought must be relevant because they are all "about" the subjects of a news report that overlap the subjects of the litigation.  Generalized likely or generalized possible relevance will not do.  The material to be disclosed must be specifically identified – enough to be able to show that it will be relevant to a ***"significant"*** matter in the case – one that could not be obtained by other means.  *Gonzales*, 194 F.3d at 36 (emphasis added).

b.   ***The Recognized Harm to Journalism***:  Second, the harm to journalism that the privilege expressly aims to deter is the prospect that the *journalist will be seen to be an investigative arm of litigants*.  That prospect will *chill* any source who is contacted by a journalist.  That prospect harms journalism at its core.  It is this judicially recognized harm that must be ***balanced*** against the interest that any litigant will naturally have in a journalist's work – an interest that must first be concretely identified.  There could be no viable or meaningful privilege if general protests of likely relevance were to suffice.  Any reporter's file is of general relevance.  But the litigant's interest must be concretely identified before it is balanced against the harm to the journalist.

**Gonzales** *Test as to Non-Confidential Materials*:  With this purpose in view, the *Gonzales* test as to non-confidential materials requires a showing that "the materials at issue are of likely relevance to a *significant issue* in the case, and are not reasonably obtainable from other sources."  *Id.* at 36 (emphasis added).

***Required Nexus to a "Significant Issue"***:  Speculation about likely relevance must be

attached to a "significant issue." That means that generalized statements of possible or likely relevance will not suffice. *See, e.g.*, *In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F. Supp. 2d 464, 469 (S.D.N.Y. 2013) ("*In re McCray*"), *citing Gonzales*, 193 F.3d at 36 and *Sikelianos*, 2008 WL 2465120 at *1. And they should not suffice, since that can be said of most reporters' files. There might be some good materials for a sparkling cross-examination; there might be some good observations about the parties that offer nice color commentary at a trial; or there might be some cumulative evidence that give further weight to a case. Surely there might be something along those lines in most reporters' files. But that kind of inquiry – that kind of sifting – is precisely what is prohibited.

   ***Balancing Test***: The test is a species of "balancing" test since it attempts to assess and weigh the need of the litigant (relevance, significance and unavailability) against the harm and burden imposed on the non-party journalist. The *Gonzales* Court points with approval to the "balancing" called for by the Third Circuit in *U.S. v. Culbertson*, 630 F.2d 139, 147 (3d Cir. 1980), a case which also cited with approval by the Ninth Circuit in *Shoen v. Shoen*, 5 F.3d 1289, 1295-96 (9th Cir. 1993). The test requires "balancing the defendant's need for the material sought against the interest of the journalist in preventing production in a particular case." *Gonzales*, 194 F.3d at 36.

   It is not sufficient to contend that something in the file might provide some fodder for cross-examination; or that they might reveal *cumulative* proof; or that it might furnish color commentary or background.

   Cases in this District that have followed *Gonzales* have consistently prohibited civil litigants "unfettered access to 'sift through [journalists'] files in search of information supporting [their] claims.'" *Sikelianos v. City of New York*, No. 05 Civ. 7673 (RJS)(JCF), 2008 WL

2465120, at *1 (S.D.N.Y. June 18, 2008).

In *Sikelianos*, Magistrate Judge Francis granted the Associated Press' ("AP") cross-motion to quash a plaintiff's subpoena demanding unpublished, nonconfidential photographs from the non-party media organization.  There, the plaintiff argued "that the [AP] photos *might* be utilized to refresh the recollection of witnesses who were on the scene [of the plaintiff's arrest]" because they "*might* expose a face, shield number, aggressive police activity, or other item(s) of interest or value."  *Id.* (citation omitted; emphasis added).  The plaintiff also argued that such photos were relevant to the issue of damages.  *Id.*

The court rejected those arguments because the plaintiff had failed to show any alleged police conduct that the defendants disputed or were likely to dispute.  *Id.*  It opined that such "reasoning could apply to any photograph of the plaintiff's arrest; it is not sufficient to show a particularized need for the photos in AP's possession."  *Id.*  In other words, the plaintiff failed to overcome the Reporter's Privilege because there was no nexus between the particularized need for the photos and the "relevance to a significant issue in the case."  *Id.*, citing *Gonzales*, 194 F.3d at 36.

Another Southern District court applying the *Gonzales* standard rejected efforts to obtain unpublished, non-confidential outtakes from a documentary about the Central Park Five.  *In re McCray*, 991 F. Supp. 2d at 470.  There, the subpoenaing defendants offered a "laundry list of reasons" why the interview outtakes sought might be relevant as potential impeachment material.  *Id.* at 470 n.2.  But the court held that was "insufficient."  *Id.* at 470.

Like the plaintiff in *Sikelianos*, the *In re McCray* defendants could not point to any particular interview or outtake that would provide the evidence they sought.  *See id.*  Like the plaintiff in *Sikelianos*, the defendants only made general claims that the outtakes were likely to

14

contain relevant material.  *See id.*  And like the plaintiff in *Sikelianos*, even though defendants

did show a particularized need for the outtakes, that factor was "not enough to overcome the

standard for relevance under *Gonzales*."  *Id.*  There was no nexus to a significant issue in the

case.

The *In re McCray* court also found that the defendants failed to meet the second prong of

the *Gonzales* test, which states that the requesting party must show that the materials sought are

"not reasonably obtainable from other sources."  *Id.*, *citing Gonzales*, 194 F.3d at 36.  It held that

where the defendants had already had the information they sought, "any statements contained in

the outtakes would be cumulative" because the available material already provided impeachment

material.  *Id.* at 471.

**Jowers Failed To Provide Reasonable Notice, and His Subpoena Violates Rules 30 and 45**

"Serving a subpoena requires delivering a copy to the named person and, if the subpoena

requires that person's attendance, tendering the fees for 1 day's attendance and the mileage

allowed by law."  Fed. R. Civ. P. 45(b); *see Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,

No. 20-Misc-23, 2020 WL 4700910, at *2 (S.D.N.Y. Aug. 13, 2020) (citation omitted).

In addition, as of 2020, Rule 30 requires the serving party and the subpoenaed

organization to "confer in good faith about the matters for examination" – "[b]efore or promptly

after the notice or subpoena is served."  Fed. R. Civ. P. 30(b)(6).  The subpoena "must advise a

nonparty organization of its duty to confer with the serving party."  *Id.*

A subpoena that "fails to allow a reasonable time to comply" must be quashed.  *See* Fed.

R. Civ. P. 45(d)(3)(A)(i).  *See also Angelo, Gordon & Co.*, 2020 WL 4700910, at *2 (four days'

notice did not afford recipient of deposition subpoena with reasonable time to comply; subpoena

quashed).

Here, Jowers' counsel claimed to have mailed the Subpoena on February 4 but did not

bring it to the Post Office until February 8 – less than two weeks before the noticed deposition

date.  *See* Lerner Decl. ¶12.  The Subpoena was not served personally, but only mailed on Feb. 8.

The Subpoena according the USPS tracking report appears to have been delivered to an

"individual" at the building where ATL's offices are located on February 11.  Lerner Decl. ¶12.;

Korzenik Decl. Ex. C.  However, it was not until February 17 – one day before the scheduled

deposition – that ATL's office manager found at the door of its offices an envelope which

contained the Subpoena and a $45.00 check for the appearance fee required by Rule 45.  *See*

Lerner Decl. ¶¶11-12.

The Subpoena commands the physical appearance of an ATL representative in

Manhattan on February 18.  Yet due to the pandemic, ATL's principal John Lerner has been

working from Massachusetts during the relevant period.

Contrary to Rule 30(b)(6), Jowers' counsel did not advise ATL of any duty to confer with

him "about the matters for examination."  *See, e.g.*, Korzenik Decl. Ex. A.

The Court should hold that Jowers' service of the Subpoena was unreasonable and

defective, in violation of both Rule 30 and Rule 45.  Jowers should not be permitted to give ATL

such an abbreviated notice of an in-person deposition and document production amidst these

circumstances.  Nor should Jowers' counsel be permitted to impose on ATL the cost of

evaluating the Subpoena under such time pressure, and moving to quash it – all because Jowers

is on the eve of discovery closing in his case.

**Further Rule 45(d)(2)(B) Objections to Subpoena Document Demands**

**Production Unduly Burdensome:** The production of the records sought is unduly

burdensome because providing such information to all third party litigants on any issue covered

by ATL would overburden it and interfere with its ability to carry out its primary function as
reporters and gatherers of news; moreover, the material sought cannot be located without the
expenditure of unreasonable burden, time and/or cost, or it is not maintained in a manner that is
subject to retrieval with reasonable cost and effort.  The fact that one of the parties to the Texas
litigation is an advertiser in ATL does not change that burden.  Publishers are not information
services for litigants.

**Subpoena Calls for Documents that Are Irrelevant and Not Necessary or
Essential to the Captioned Litigation:** The Subpoena calls for information that is not necessary
or essential to the subject litigation; not relevant to any of the claims or defenses therein; and not
designed or reasonably calculated to lead to or obtain relevant or admissible evidence.

**Information Is Otherwise Available; Other Avenues Must First Be Exhausted:**
The information sought is available by other means without burdening ATL.  Jowers should first,
and must first, exhaust other avenues of discovery before seeking these documents from ATL.
This threshold requirement is one of the several aspects of the Fed. R. Civ. P. 45(d)(1) duty that
Jowers and his counsel owe to ATL.  Apparently, the deposition of Mr. Kinney in the Texas
action was just conducted.

**Overbroad, Vague and Lacking in Reasonable Particularity:**  The requests as
framed are overbroad, unreasonably vague and lacking in fair or reasonable particularity or
specificity.

**Objection to Logging Privilege:** The Reporter's Privilege would be violated by any
requirement that each communication with sources and editors, etc. be identified, along with its
date and its subject matter.  It is precisely that information that is protected by the privilege.  To
provide such a list would permit an inquiring party to "sift" through a journalist's files to see if

there might be something that might possibly be of interest to them.  Materials requested are materials likely developed in the course of newsgathering and reporting which is the foundation for the assertion of the privilege.  In this case, most of the document requests and deposition topics by their own terms constitute and include demands for protected news gathering materials. Hence, the *demands themselves* provide the foundation for the assertion of the Reporter's Privilege.  In all events, a log would entail the disclosure of information about sources and reporting that the Privilege is precisely designed to protect.  Significantly, the demands are also so expansive, vague, indiscriminate and lacking in reasonable specificity that no log could reasonably be prepared to address them.  It would be extremely abusive and unfair to frame blunderbuss requests of the kind demanded here and then to demand a log.  They have been so expansively and unreasonably framed as to make the preparation of a log unreasonably costly, time-consuming and wasteful.

  ***Relief Sought***: By this Motion, Petitioner seeks this relief:

1. An Order *quashing the Subpoena* on grounds of the Reporter's Privilege.  The bulk of the Requests seek information from the reporter's files regarding the publication of three news articles published by ATL – the two most important ones about the Texas lawsuit;

2. An Order *quashing the Subpoena* on the grounds that Respondent has "failed to allow reasonable time to comply" per Rule 45(d)(3)(A)(i) with Jowers' 45 demands; and that Jowers' counsel did not allow time for a proper Meet & Confer in advance of the initial motion practice that was forced on ATL's counsel needlessly.  By forcing ATL to incur the costs of a motion to quash before issues are either resolved or narrowed, Jowers has imposed needless cost and effort on Petitioner ATL;

3. *Rule 45(d)(1) protections due Subpoenaed Non-Parties:* For Jowers by his counsel to

persist with this subpoena which is aimed at privileged information and which was first pressed without a proper meet and confer is a violation of the "duty" which Jowers owes to ATL and to the Court under Fed. R. Civ. P. 45(d)(1). As that Rule provides (emphasis added),

> "the Court . . . ***must*** enforce this duty and impose an appropriate sanction – which may include . . .  reasonable attorney's fees . . . ."

That can be done by an order quashing the Subpoena or granting ATL its legal fees or both.

4. An Order *quashing the Subpoena* on the grounds that it was never properly served on ATL.  Jowers' counsel claims to have served the Subpoena on February 4, but nothing was received at ATL's 611 Broadway offices either on February 5 or on February 12 when its office manager was present.  Only on February 17, when ATL's counsel was in the midst of preparing motion papers, did ATL's office manager find at its door an envelope containing the Subpoena and an appearance check.  *See* Lerner Decl. ¶¶11-12. Jowers' counsel claims to have sent the Subpoena to ATL by email and/or by social media.  ATL's principal, John Lerner, has been working from Massachusetts during the relevant period.  And the journalist who wrote the two articles about the Texas rulings has been working remotely in Putnam County and has not been to the office during the relevant period.  Service was never properly made; and it would be defective in all events given that no appearance check not simultaneously delivered with the Subpoena as Rule 45 requires until the literal eve of the scheduled deposition.

5. An Order *modifying the Subpoena* to the extent that it demands documents and disclosures of *proprietary and confidential information* regarding the ATL publisher's practices under Fed. R. Civ. P. 45(d)(2)(B)(i).  Kinney's company is an advertiser with

ATL.  But that does not alter the fact that the two articles about the Texas case do no

more than report what the reported court rulings said and what the court docket shows.  A

reading of the articles defeats the specious and overreaching premise of Jowers' counsel.

6. The Court should *quash the Subpoena* as to its demands for information about the Kinney

Recruiting Ads unless Jowers can show some reasonable grounds connected to its case

for the disclosure of such information.  If a legitimate basis is shown for such discovery,

it should be limited to defined written interrogatories.  But to date no such basis has been

put forth or shown by Respondent Jowers or his counsel.

## CONCLUSION

The Court should quash the Subpoena and award ATL its reasonable expenses and

attorneys' fees incurred in responding to it, including on this motion.

Dated: New York, New York
    March 4, 2021

                                 MILLER KORZENIK SOMMERS RAYMAN LLP

                                 By:＿＿＿＿＿／s/David S. Korzenik＿＿＿＿＿＿＿＿＿＿
                                         David S. Korzenik
                                         Terence P. Keegan
                                         Zachary Press
                                         1501 Broadway, Suite 2015
                                         New York, NY 10036
                                         Phone:  212-752-9200
                                         Fax:     212-688-3996
                                         dkorzenik@mkslex.com
                                         *Attorneys for Breaking Media, Inc.*

20