UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BREAKING MEDIA, INC., <br><br> Petitioner, <br><br> -v.- <br><br> EVAN P. JOWERS, <br><br> Respondent. | 21 Misc. 194 (KPF) <br><br> **OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Respondent Evan Jowers is a defendant in a lawsuit currently pending in the United States District Court for the Western District of Texas, captioned *MWK Recruiting, Inc.* v. *Jowers, et al.*, No. 18 Civ. 444 (RP) (AWA) (W.D. Tex.) (the "Underlying Suit"). (*See* Dkt. #1). In the Underlying Suit, plaintiff MWK Recruiting, Inc. ("MWK") alleges, *inter alia*, that Respondent misappropriated trade secrets and breached several contracts. *See MWK Recruiting, Inc.* v. *Jowers*, No. 18 Civ. 444 (RP) (AWA), 2019 WL 7761445, at *2 (W.D. Tex. July 29, 2019). As part of his defense, Respondent subpoenaed Petitioner Breaking Media, Inc. — publisher of the legal news website *Above the Law* ("ATL") — seeking information, including documents and deposition testimony, primarily regarding four articles published by ATL. Pending before the Court is Petitioner's amended motion to quash the subpoena pursuant to Federal Rule of Civil Procedure 45 and for attorneys' fees and expenses incurred in responding to the subpoena. For the reasons set forth below, the Court grants Petitioner's motion in full.

## BACKGROUND[1]

The Underlying Suit "is brought by MWK Recruiting, Inc., a legal recruiting firm, against Evan Jowers, a former employee of the firm, alleging that Jowers misappropriated trade secrets and breached the non-compete and non-solicitation provisions of his employment agreement." *MWK Recruiting, Inc.* v. *Jowers*, No. 18 Civ. 444 (RP) (AWA), 2020 WL 1987921, at *1 (W.D. Tex. Apr. 27, 2020). The parties have been acrimoniously litigating the Underlying Suit for more than four years; the Court relates only such information about the suit that is pertinent to resolving the instant motion.

As relevant here, ATL published two articles that reported on judicial decisions issued in the Underlying Suit. (*See* April 2020 Article; December 2020 Article). Respondent asserts that ATL was improperly critical of him and his counsel in these two articles, and alleges that this coverage was "orchestrated" by Robert E. Kinney, MWK's principal, who "has been a sponsor of [ATL] for over a decade." (Resp. Opp. 1, 4). Respondent alleges that, as a

---

[1]  The facts recounted herein are drawn from the parties' submissions in connection with the instant motion, including the Declaration of John Lerner in Support of Petitioner's Amended Motion to Quash ("Lerner Decl." (Dkt. #14)), and the Declaration of David S. Korzenik in Support of Petitioner's Amended Motion to Quash and the exhibits attached thereto ("Korzenik Decl., Ex. [ ]" (Dkt. #15)). The Court refers to the subpoena at issue in the instant motion as the "Subpoena" (Korzenik Decl., Ex. A), and to the ATL articles referenced in the Subpoena as follows: the "December 2020 Article" (Subpoena, Ex. A); the "April 2020 Article" (*id.*, Ex. B); the "Barnes Article" (*id.*, Ex. C); and the "Hong Kong Article" (*id.*, Ex. D). For convenience, citations to the Subpoena and its exhibits utilize the pagination assigned by the Court's Electronic Case Filing ("ECF") system.

For ease of reference, the Court refers to the parties' submissions as follows: Petitioner's amended motion to quash is referred to as "Am. Mtn." (Dkt. #13); Petitioner's amended memorandum of law in support of its motion to quash is referred to as "Pet. Am. Br." (Dkt. #16); Respondent's brief in opposition to the motion to quash is referred to as "Resp. Opp." (Dkt. #23); and Petitioner's reply memorandum of law in further support of its motion to quash is referred to as "Pet. Reply" (Dkt. #25).

result of ATL's coverage, his prior counsel, the law firm DLA Piper, withdrew from the case, and that since then he has been unable to find local counsel. (*Id.* at 3-5). Petitioner responds that several other media outlets reported on the same judicial decisions that the April 2020 Article and December 2020 Article covered, and that in any event, ATL's coverage consisted primarily of quotes from the relevant judicial decisions. (Lerner Decl. ¶ 3; *see also* April 2020 Article; December 2020 Article).

In addition to seeking information about the April 2020 Article and December 2020 Article, the Subpoena targets material related to two other ATL articles. *First*, it seeks information about the Barnes Article, a 2013 article discussing inappropriate remarks made by a legal recruiter. (Subpoena 8, 10). As far as the Court can discern, the Barnes Article — as well as the recruiter and subject matter discussed therein — has no connection or relevance to the Underlying Suit. (*See* Barnes Article; *see generally* Resp. Opp. (failing to mention or discuss the Barnes Article)). *Second*, the Subpoena seeks information regarding the Hong Kong Article, which was published in 2015 and is entitled "Kinney's Evan Jowers Now Permanently Based In Hong Kong." (Hong Kong Article; *see also* Subpoena 8, 10). Petitioner states that this article "was an ad placed, paid for[,] and written by Kinney Recruiting." (Korzenik Decl. ¶ 18).

The Subpoena is dated February 1, 2021, and required compliance — including the production of 20 categories of documents and a deposition pursuant to Fed. R. Civ. P. 30(b)(6) on 25 topics — on or before February 18,

2021. (*See* Subpoena 4, 9-10, 16-18; *see also* Lerner Decl. ¶ 2; Korzenik Decl. ¶ 2). Petitioner disputes that it was properly served with the subpoena and alleges that it did not have sufficient notice until February 17, 2021, the day before it was to comply. (*See* Lerner Decl. ¶¶ 11-12). However, Petitioner's attorney states that he contacted Respondent's attorney regarding the Subpoena as early as February 15, 2021 (Korzenik Decl. ¶ 5), and Petitioner's chief executive officer concedes that he received email notice of the Subpoena on February 2, 2021, and that he emailed Respondent's counsel regarding the Subpoena on February 12, 2021 (Lerner Decl. ¶ 6).

Petitioner's counsel states that he attempted to meet and confer with Respondent's counsel regarding a stipulation to extend Petitioner's time to respond to the Subpoena on February 15, 2021, but the following day Respondent's counsel declined to consent to any extension. (Korzenik Decl. ¶¶ 8-9). As a result, Petitioner alleges that it was required to prepare its motion to quash in only one day in order to file the motion before the February 18, 2021 compliance date, purportedly causing needless expense. (*Id.* at ¶¶ 10-11). Petitioner also alleges that it attempted to meet and confer in good faith to narrow the scope of the Subpoena, but Respondent refused to narrow the scope. (*See id.* at ¶¶ 13-19). Petitioner notes that at Respondent's counsel's request, it made an adjustment to the December 2020 Article. (Lerner Decl. ¶ 5).

On February 17, 2021, Petitioner filed the instant motion to quash, along with supporting papers. (Dkt. #1-3). In its submissions, Petitioner requested

4

that the Court stay Petitioner's obligation to comply with the Subpoena pending resolution of the motion and sought leave to file an amended motion to quash and supplemental briefing in further support of its motion. (Dkt. #3). The Court granted Petitioner's request and set a briefing schedule for the motion to quash. (Dkt. #8). Petitioner filed an amended motion to quash and supporting papers on March 4, 2021 (Dkt. #13-16); Respondent filed his opposition papers on March 11, 2021 (Dkt. #23); and Petitioner filed its reply on March 18, 2021 (Dkt. #25).

## DISCUSSION

### A.  The Court Grants the Amended Motion to Quash

The Subpoena requires Petitioner to produce 20 categories of documents, and to provide a deponent pursuant to Fed. R. Civ. P. 30(b)(6) to speak on 25 topics, regarding four articles published by ATL. (Subpoena 9-10, 16-18). Among other things, Respondent seeks: (i) all communications between ATL and various parties to the Underlying Suit, (ii) research, (iii) documents regarding editorial decisions, and (iv) deposition testimony related to the April 2020 Article, the December 2020 Article, the Barnes Article, and the Hong Kong Article. (*See id.* at 7-18). Petitioner moves to quash the Subpoena pursuant to the journalist's privilege and as unduly burdensome pursuant to Fed. R. Civ. P. 45. (*See* Am. Pet. Br. 8-10, 16-17). The Court agrees with Petitioner on both grounds and grants the motion to quash.

### 1. The Journalist's Privilege Applies

The Second Circuit "has long recognized the existence of a qualified privilege for journalistic information."  *Gonzales* v. *Nat'l Broad. Co.*, 194 F.3d 29, 32 (2d Cir. 1999).  The privilege, rooted in the First Amendment and federal common law, arises from a "concern for the potential harm to the 'paramount public interest in the maintenance of a vigorous, aggressive[,] and independent press capable of participating in robust, unfettered debate over controversial matters.'"  *Id.* at 33 (quoting *Baker* v. *F & F Inv.*, 470 F.2d 778, 782 (2d Cir. 1972)).  The privilege may be invoked by an individual "involved in activities traditionally associated with the gathering and dissemination of news, even though he may not ordinarily be a member of the institutionalized press."  *von Bulow ex rel. Auersperg* v. *von Bulow*, 811 F.2d 136, 142 (2d Cir. 1987).  However, to invoke the privilege, an individual must be acting in "the role of the *independent* press" when "collecting the information in question."  *Chevron Corp.* v. *Berlinger*, 629 F.3d 297, 307 (2d Cir. 2011).

The journalist's (or reporter's) privilege protects both confidential and nonconfidential information.  *Gonzales*, 194 F.3d at 35-36.  Once established, the journalist's privilege is a qualified one that may be overcome.  *Id.*  In order to "to prevent the unnecessary enmeshing of the press in litigation that arises from events they cover" when — as here — the material sought is nonconfidential, a "subpoena must be quashed unless the issuing party demonstrates [i] 'that the materials at issue are of likely relevance to a significant issue in the case,' and [ii] the materials at issue 'are not reasonably

6

obtainable from other available sources.'" *Schoolcraft* v. *City of New York*, No. 10 Civ. 6005 (RWS), 2014 WL 1621480, at *2 (S.D.N.Y. Apr. 22, 2014) (quoting *Gonzalez*, 194 F.3d at 36).

The journalist's privilege is also recognized under the New York Shield Law, which law provides "[q]ualified protection for nonconfidential news." N.Y. Civ. Rights Law § 79-h(c).[2] To obtain any such nonconfidential information, a party must make a "clear and specific showing" that the information "(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense[,] or proof of an issue material thereto; and (iii) is not obtainable from any alternative source." *Id.*; *see also Holmes* v. *Winter*, 22 N.Y.3d 300, 308-09 (2013).

---

[2] Both "parties' briefs assume that New York law controls this issue, and such implied consent is sufficient to establish choice of law." *MIG, Inc.* v. *Paul, Weiss, Rifkind, Wharton & Garrison, LLP*, 701 F. Supp. 2d 518, 532 (S.D.N.Y. 2010) (internal citations and modifications omitted) (quoting *Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 61 (2d Cir. 2004), *aff'd*, 410 F. App'x 408 (2d Cir. 2011) (summary order)); *see also Mortg. Resol. Servicing, LLC* v. *JPMorgan Chase Bank, N.A.*, No. 15 Civ. 293 (LTS) (JCF), 2017 WL 2889501, at *2 (S.D.N.Y. July 6, 2017); *Amtrust N. Am., Inc.* v. *Safebuilt Ins. Servs., Inc.*, 186 F. Supp. 3d 278, 281-82 (S.D.N.Y. 2016). In any event, after conducting a choice of law analysis, the Court determines New York law applies here.

A federal court sitting in diversity applies the choice of law rules of the forum state. *See Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Because privilege rules are considered "conduct-regulating," New York applies the law of the "locus" of the conduct at issue, "because of [the locus jurisdiction's] interest in affecting the conduct of those who act within the jurisdiction and of a reliance interest on the part of the actors whose conduct is at issue." *AroChem Int'l, Inc.* v. *Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992) (citing *Schultz* v. *Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 198 (1985)). Here, the matters sought to be discovered stem from conduct based in New York because, *inter alia*, (i) ATL is headquartered in New York, (ii) ATL primarily carries out its publishing activities in New York, and (iii) New York has expressed a strong interest in protecting the activities of its domiciliary news publishers through application of its privilege law. *Cf. Stephens* v. *Am. Home Assurance Co.*, No. 91 Civ. 2898 (JSM) (KAR), 1995 WL 230333, at *6-7 & n.24 (S.D.N.Y. Apr. 17, 1995).

Here, the Underlying Suit raises claims under a federal statute, the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(d), as well as state law, *see MWK Recruiting, Inc.* v. *Jowers*, No. 18 Civ. 444 (RP) (AWA), 2020 WL 7229977, at *11 (W.D. Tex. Dec. 8, 2020) (denying Respondent's motion for judgment on the pleadings as to MWK's DTSA claim). "[A]sserted privileges in actions that raise both federal and pendent state law claims are governed by the principles of federal law." *In re McCray, Richardson, Santana, Wise, & Salaam Litig.*, 928 F. Supp. 2d 748, 753 (S.D.N.Y. 2013) ("*In re McCray*"), *report and recommendation adopted*, 991 F. Supp. 2d 464 (S.D.N.Y. 2013). Thus, Petitioner's assertion of privilege will be considered under the Second Circuit's articulation of the journalist's privilege, with consideration of the congruent federal and state policies. *Cf. Gonzalez*, 194 F.3d at 33 (holding that non-confidential materials are protected under the journalist's privilege because there is a "broader concern for the potential harm to the 'paramount public interest in the maintenance of a vigorous, aggressive and independent press'" (quoting *Baker*, 470 F.2d at 782)).

Petitioner asserts the journalist's privilege over the materials relating to the April 2020 Article, the December 2020 Article, and the Barnes Article. (Am. Pet. Br. 3-5). Respondent does not dispute the applicability of New York law or the journalist's privilege as articulated by the Second Circuit. (Resp. Opp. 5-8). Nor does Respondent dispute that ATL has properly invoked the journalist's privilege. Instead, he argues that the qualified privilege may be overcome in this instance. (*Id.* at 5). The Court pauses briefly to note that ATL clearly

8

meets the requirements to invoke the privilege as it is in the business of reporting on and publishing information about legal news. Furthermore, Respondent seeks to compel Petitioner to disclose unpublished editorial and reporter work product. (*See generally* Subpoena). As such, the Court determines that the qualified journalist's privilege applies here.

Turning to whether Respondent has adequately established that the qualified privilege may be overcome, the Court concludes that Respondent fails to meet both prongs of the *Gonzalez* test as it applies to nonconfidential information. To review, the first prong requires the party seeking to compel disclosure to demonstrate that the information sought is of "likely relevance" and goes to a "significant issue" in the case. *Gonzalez*, 194 F.3d at 36; *see also In re McCray*, 928 F. Supp. 2d at 757-58. While "this standard is less exacting than that which applies to confidential materials, a litigant seeking nonconfidential materials will not be granted unfettered access" to a reporter's files. *Sikelianos* v. *City of New York,* No. 05 Civ. 7673 (RJS) (JCF), 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008). The second prong "requires the issuers of subpoenas to make reasonable efforts through discovery to obtain the information from alternative sources to defeat the privilege." *New Eng. Teamsters & Trucking Indus. Pension Fund* v. *N.Y. Times Co.*, No. 14 Misc. 59 (RWS), 2014 WL 1567297, at *4 (S.D.N.Y. Apr. 17, 2014) (citing *Gonzalez*, 194 F.3d at 36).

*First*, the material sought by Respondent is not "of likely relevance to a significant issue in the case," *Gonzalez*, 194 F.3d at 36, and as such, the

motion to quash must be granted.  In sum, Respondent argues that the subpoenaed materials are relevant to establishing that MWK is litigating the Underlying Suit in bad faith, because Respondent alleges that MWK communicated with ATL in order to "influence the outcome of the case through improper channels" by garnering coverage of the case that portrayed Respondent and his counsel in a negative light.  (Resp. Opp. 6).  Specifically, Respondent argues that these materials are critical "in order to demonstrate [MWK's] motives to taint the litigants and the litigation [in the Underlying Suit] through improper and likely false or misleading communications," which communications "serve one purpose and one purpose only — to render Jowers without any local counsel[.]"  (*Id.* at 6-7).

These contentions are plainly insufficient to establish that the materials sought are relevant to any significant issue in the Underlying Suit.  MWK's purported actions to render Respondent without local counsel, even if true, are completely irrelevant to any claim or defense in the Underlying Suit, which concerns whether Respondent misappropriated MWK's trade secrets or disclosed confidential information in violation of a contract between the parties.  *Accord Sikelianos*, 2008 WL 2465120, at *1 (declining to override privilege because issue of damages and need to refresh witnesses were insufficiently relevant to significant issue).  Even if Respondent were able to prove that MWK intended to prevent him from obtaining local counsel by dint of information produced by ATL, such proof would be irrelevant to whether Respondent actually misappropriated trade secrets or breached any contracts with MWK.

10

*Accord In re McCray*, 928 F. Supp. 2d at 758 (denying motion to compel where information sought would be relevant to plaintiffs' credibility, not to claim or defense). Accordingly, Respondent fails to establish that the information sought is "of likely relevance to a significant issue in the case." *Gonzalez*, 194 F.3d at 36.

Additionally, Respondent fails to establish that the material sought is "not reasonably obtainable from other available sources." *Gonzalez*, 194 F.3d at 36. In his opposition, Respondent states only that MWK lodged objections to his discovery request as to MWK's relationship — if any — with ATL (*see* Resp. Opp. 7-8), but this statement is similarly insufficient to establish that the material is not reasonably obtainable from MWK or other sources. For example, Respondent could have obtained this information during the deposition of Kinney, MWK's principal (*see id.* at 6 ("Mr. Kinney's communications regarding the [Underlying Suit] to [ATL] ... will likely demonstrate how Kinney ... tried to influence the outcome of the case through improper channels.")), yet Respondent fails to state whether he asked about this information or otherwise addressed Kinney's relationship with Petitioner at Kinney's deposition (*see id.* at 7-8). Similarly, Respondent provides no information about any efforts to follow up on MWK's objections to the relevant discovery request in the Underlying Suit. (*See id.*). As such, Respondent fails to provide even the most basic information regarding efforts to obtain this information from alternate sources, necessitating the quashing of the Subpoena. *Accord New Eng. Teamsters & Trucking Indus. Pension Fund*, 2014

WL 1567297, at *5 (declining to overcome qualified journalist's privilege where party failed to provide "any deposition testimony from [litigant's] records custodians or Rule 30(b)(6) witness or interrogatory responses from any [of litigant's] witnesses" to establish that subpoenaed information was not reasonably available from litigant before subpoenaing journalist).

### 2. The Subpoena Is Unduly Burdensome

Petitioner also seeks to quash the Subpoena pursuant to Rule 45 as unduly burdensome. (Pet. Am. Br. 16-17). "Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)." *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) (citing *During* v. *City Univ. of N.Y.*, No. 05 Civ. 6992 (RCC), 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006)). Rule 26(b)(1) permits the discovery of material if it is relevant to a party's claim or defense and proportional to the needs of the case. A court can, for good cause, issue an order to protect a party or person from undue burden. Fed. R. Civ. P. 26(c)(1). Additionally, "a party issuing a subpoena must take reasonable steps to avoid imposing an undue burden on the person subject to the subpoena, and a court must, on a timely motion, quash or modify a subpoena if it subjects a person to undue burden." *Homeward Residential, Inc.* v. *Sand Canyon Corp.*, No. 12 Civ. 5067 (JFK) (JLC), 2017 WL 4676806, at *18 (S.D.N.Y. Oct. 17, 2017) (citing Fed. R. Civ. P. 45(d)(1)-(3)).

> A determination of whether a subpoena imposes an undue burden
>
> > requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. Whether a subpoena imposes an "undue burden" depends upon such factors as

12

> relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.

*Copantitla* v. *Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608 (RJH) (JCF), 2010 WL 1327921, at *10 (S.D.N.Y. Apr. 5, 2010) (internal quotation marks omitted) (quoting *Travelers Indem. Co.* v. *Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005)).  "However, courts also give special weight to the burden on non-parties of producing documents to parties involved in litigation."  *Travelers Indem. Co.*, 228 F.R.D. at 113.

The Court first addresses whether the Subpoena, as it relates to the Hong Kong Article, imposes an undue burden on Petitioner because Petitioner does not assert the journalist's privilege as to this article.  (*See* Pet. Am. Br. 5-6).  Instead, Petitioner objects to the production of materials and to sitting for a deposition regarding this article on relevancy and proportionality grounds.  (*Id.*).  Respondent does not respond to Petitioner's objections to the Subpoena as it relates to the Hong Kong Article.  (*See generally* Resp. Opp.).  Nor does Respondent offer any argument or rationale as to why the material sought regarding the Hong Kong Article is relevant to the Underlying Suit.  (*Id.*).  As such, the Court agrees with Petitioner that requiring ATL to undertake the costly efforts of combing through its files, reviewing and producing material relevant to this article, and producing a representative to sit for a deposition to discuss this article (*see* Pet. Am. Br. 5-6, 16-17), would be unduly burdensome — especially because Respondent has not articulated any reason why the material is relevant.  Thus, to the extent the Subpoena seeks material

about the Hong Kong Article, it is not proportional to any relevance *vel non* that this material may have to the Underlying Suit.

The Court separately determines that, for essentially the same reasons that Respondent has failed to overcome the journalist's privilege, the Subpoena would be unduly burdensome to the extent it seeks material related to the remaining three articles.  Petitioner states that "the material sought cannot be located without the expenditure of unreasonable burden, time and/or cost, or it is not maintained in a manner that is subject to retrieval with reasonable cost and effort." (Pet. Am. Br. 17).  Petitioner further argues that it had insufficient time to prepare for the deposition sought in the Subpoena.  (*Id.* at 15).  Petitioner asserts that compliance with the Subpoena would "interfere with its ability to carry out its primary function as reporters and gatherers of news[.]"  (*Id.* at 17).

The Court finds that the material sought from ATL "is not sufficiently relevant to the claims or defenses at issue in [the Underlying Suit] so as to justify its production" or a deposition.  *Homeward Residential, Inc.*, 2017 WL 4676806, at *18.  As explained above, Respondent concedes that the material has no bearing whatsoever on the merits of the Underlying Suit, and is relevant only to his argument that MWK is conspiring with ATL to prevent him from securing local counsel by giving him and his counsel bad publicity.  This is an insufficient reason to impose the burden of extensive document discovery and a deposition on Petitioner, especially when Respondent offers only conclusory

14

allegations in support of his accusations of impropriety.[3] As such, although Petitioner does not provide an exhaustive accounting of the burden that would be imposed by compliance with the Subpoena, given the irrelevance of the material sought, the Court determines Petitioner has adequately demonstrated undue burden.

Furthermore, Rule 45 requires that "a party issuing a subpoena must take reasonable steps to avoid imposing an undue burden" on a third party. Fed. R. Civ. P. 45(d)(1). Respondent clearly has not done so here, because as explained above in greater detail, he has made no showing that he even attempted to pursue the material sought here through other means — for example, by deposing Kinney or moving to compel MWK. In sum, because the material sought by Respondent is not relevant to any claim or defense in the Underlying Suit, and because Respondent failed to take any reasonable steps to obtain the information sought through other means, the Court finds that the Subpoena is unduly burdensome and grants Petitioner's motion to quash.[4]

---

[3] Even accepting Respondent's contention that his failure to secure counsel is relevant to the Underlying Suit, Respondent also fails to establish that the material sought is relevant to this failure to secure counsel. For example, Respondent's failure to secure counsel may be due to the merits of the Underlying Suit, Respondent's unwillingness to pay fees requested by prospective counsel, the media coverage of the Underlying Suit by other outlets, or any number of reasons that are equally plausible to Respondent's theory that MWK is conspiring with ATL to deprive him of counsel by reporting on judicial decisions issued in the Underlying Suit.

[4] Because the Court determines that the Subpoena (i) is unduly burdensome and (ii) seeks information that is protected by the journalist's privilege, and accordingly quashes the Subpoena after considering the merits of the parties' arguments, the Court need not address the procedural issues raised by Petitioner, such as service and timeliness.

## B. Petitioner Is Entitled to Reasonable Attorneys' Fees and Expenses

Petitioner seeks reasonable attorneys' fees and expenses incurred in responding to the Subpoena pursuant to Federal Rule of Civil Procedure 45(d)(1). (Am. Mtn.). Under Rule 45(d)(1), when a party issues a subpoena without taking "reasonable steps to avoid imposing undue burden or expense" on a third party, the issuing court "*must* ... impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees" — on the party or attorney responsible for the failure to do so. Fed. R. Civ. P. 45(d)(1) (emphasis added). Courts typically undertake a two-part inquiry to determine whether sanctions are warranted under Rule 45(d)(1): "[i] whether the challenged subpoena imposed an undue burden or expense on the person(s) subject thereto; and [ii] if so, what, if any, 'reasonable steps' the subpoenaing party and its counsel took to avoid imposing such a burden." *Saint-Jean* v. *Emigrant Mortg. Co.*, No. 11 Civ. 2122 (SJ), 2015 WL 13735434, at *3 (E.D.N.Y. Oct. 7, 2015) (citing *Molefi* v. *Oppenheimer Tr.*, No. 03 Civ. 5631 (FB) (VVP), 2007 WL 538547, at *2 (E.D.N.Y. Feb. 15, 2007)).[5]

To satisfy the first prong, courts have recognized that the "undue burden" analysis is tied to the relevance of the material sought and is directly related to the court's decision to quash a subpoena for imposing an undue burden. *See Molefi*, 2007 WL 538547, at *3 ("When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue

---

[5]     Prior to the 2013 amendments to Fed. R. Civ. P. 45, the provisions in subdivision (d) were in subdivision (c). *See* Fed. R. Civ. P. 45(d) advisory committee's note to 2013 amendment ("Subdivision (d) contains the provisions formerly in subdivision (c).").

16

burden or expense' within the meaning of Civil Rule 45(c)(1)." (quoting *Builders Ass'n of Greater Chi.* v. *City of Chicago*, No. 96 Civ. 1122 (GSB), 2002 WL 1008455, at *4 (N.D. Ill. May 13, 2002))); *see also Copantitla*, 2010 WL 1327921, at *10 (collecting cases). "Sanctions are properly imposed and attorney's fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash." *Night Hawk Ltd.* v. *Briarpatch Ltd., L.P.*, No. 03 Civ.1382 (RWS), 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 23, 2003) (awarding attorneys' fees incurred by party successfully moving to quash a non-party subpoena that sought irrelevant testimony as unduly burdensome pursuant to Rule 45); *see also Molefi*, 2007 WL 538547, at *3. Here, the material sought by Respondent is irrelevant to the merits of the Underlying Suit, and as noted above, Petitioner has sufficiently established that compliance would impose an undue burden.

Turning to the second prong, Respondent refused to narrow the scope of the Subpoena or otherwise address any of Petitioner's objections on privilege, relevance, and proportionality grounds, which objections Petitioner raised in multiple meet-and-confers. (*See* Korzenik Decl. ¶¶ 13-19). *Accord Angelo, Gordon & Co., L.P.* v. *MTE Holdings, LLC*, No. 20 Misc. 23 (AT), 2020 WL 4700910, at *3 (S.D.N.Y. Aug. 13, 2020) (granting attorneys' fees and quashing subpoena pursuant to Rule 45 where insufficient notice given and issuing party "took no steps to modify the subpoena upon notice of its deficiencies"); *Am. Int'l Life Assurance Co.* v. *Vasquez*, No. 02 Civ. 141 (HB), 2003 WL 548736, at *2-3 (S.D.N.Y. Feb. 25, 2003) (imposing sanctions for lost wages and

17

awarding attorneys' fees incurred in bringing motion to quash after attorney issuing subpoena refused to comply with non-party's request to voluntarily withdraw subpoena that sought privileged information).  Here, Respondent (i) was on notice that much of the material sought was privileged; (ii) failed to articulate how the material was relevant to the Underlying Suit, and (iii) in support of its Subpoena, advanced spurious allegations of bad faith — without any evidence — in an effort to impugn Petitioner.  As such, the Court finds that the Subpoena should never have issued and determines that Petitioner is entitled to recover reasonable attorneys' fees and expenses incurred in responding to the Subpoena.

## CONCLUSION

For the foregoing reasons, Petitioner's motion is GRANTED in its entirety. Petitioner may submit to the Court, within 14 days of the date of this Opinion, contemporaneous billing records, other documented expenses, and supporting papers in support of an award of fees and costs under Rule 45(d)(1). Respondent may file an opposition, if any, within 14 days of Petitioner's submission.  The Clerk of Court is directed to terminate the motions pending at docket entries 1 and 13.

SO ORDERED.

Dated:  April 7, 2021
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge