UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BREAKING MEDIA, INC. dba ABOVE THE LAW, <br><br> Petitioner, <br><br> -against- <br><br> EVAN P. JOWERS, <br><br> Respondent. <br><br> Re: Subpoena Issued in: <br> *MWK Recruiting, Inc. v.* <br> *Evan P. Jowers, et al.* <br> U.S. District Court <br> Western District of Texas | Case No.: 1-21-mc-00194-KPF <br><br> Associated Case: <br> 1:18-cv-00444 (W.D.Tx.) |

**MEMORANDUM OF LAW OF PETITIONER BREAKING MEDIA, INC.
IN SUPPORT OF ITS APPLICATION FOR ATTORNEYS' FEES AND COSTS**

**Petitioner Breaking Media, Inc.**, publisher of *Above the Law* ("ATL" or "Petitioner"), by its attorneys Miller Korzenik Sommers Rayman LLP, submits this Memorandum of Law in support of its application for an award of attorneys' fees and costs pursuant to the Court's April 7, 2021 order.[1] Specifically, ATL seeks an award of $38,293.67. The Court should hold Respondent's counsel as well as Respondent jointly and severally liable for this amount.

### FACTUAL AND PROCEDURAL BACKGROUND

The Court granted ATL's motion pursuant to Fed. R. Civ. P. 45 to quash a subpoena issued to it by Respondent Evan Jowers ("Jowers") and his counsel Robert Tauler from an action pending in the Western District of Texas entitled *MWK Recruiting, Inc. v. Jowers, et al.*, No. 18-

---

[1] *See Breaking Media, Inc. v. Jowers*, No. 21-mc-194 (KPF), Dkt. No. 27, 2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021) ("Order").

cv-444.  The Court also ordered that ATL was entitled to recover its reasonable attorneys' fees and expenses incurred in responding to the Subpoena.  The Court concluded that the Subpoena "should never have issued."  Order, 2021 WL 1299108, at *8.

In tandem with the Order, the Court advised counsel that parties regularly reach an agreement on fee awards before having to incur additional cost in briefing a fee petition.  To that end, Petitioner's lead counsel, David Korzenik, provided Respondent's counsel with a summary statement of the attorney time expended, and also proposed a compromise that significantly reduced the lead counsel's hourly rate by more than 20% and discounted the total by a further 10%.  *See* Declaration of David S. Korzenik dated April 28, 2021 ("Korzenik Decl."), at ¶¶7-8 & Exhibit ("Ex.") B, at 2-3.

Mr. Tauler rejected the proposal, countering that payment of ATL's fees would be "contingent" on ATL accepting a commitment of $200,000 in advertising on its website from Jowers.  He insisted it would be "outrageous" for ATL to decline his counter, or to view any prospective advertising agreement between ATL and Jowers as a separate matter.  "By the way," he added, "I have not negotiated here in any way my own claims under California law for false light defamation. Breaking media will be 'broke media' after I am done with them, of that you can be sure."  *See* Korzenik Decl. ¶¶9-10 & Ex. B, at 1-2.

Nothing was said or done by ATL's counsel to justify or even provoke that response.  ATL's counsel had not asked for any advertising commitment of any kind, and ATL's counsel had never discussed anything about any claim that Mr. Tauler might have threatened against ATL.  Still, ATL sought to understand Mr. Tauler's counter-proposal.  Its counsel responded with questions about how a six-figure advertising agreement with Jowers would work, and about

2

why payment of ATL's attorney fees would have to be "contingent" upon it. *See* Korzenik Decl. Ex. B, at 4-5.

Mr. Tauler never ventured to answer ATL's questions. In an effort to entangle ATL's counsel in his fight with Kinney in Texas, he wrote: "If you want to save the deal, I would appreciate if you told him [Kinney] to not interfere." *See* Korzenik Decl. Ex. B, at 4.

But there was no "deal" to "save." Advertising is a separate matter that can be undertaken as Jowers and ATL subsequently agree. But no advance commitment is needed nor was it ever demanded or suggested by ATL. And ATL's counsel does not know Kinney; nor have they ever spoken with him. *See* Korzenik Decl. ¶9.

Mr. Tauler had returned to his prior effort to insert his Texas conspiracy theory, now into the unrelated negotiation of the fee application – with allegations akin to the conspiracy that he manufactured in his response to ATL's motion to quash the Subpoena. That alleged conspiracy was baseless, not to mention irrelevant then, and it is baseless and irrelevant now. *See* Order at \*6 & n.3. Yet, Mr. Tauler still pushed the same theory as before.

In light of Respondent's counsel's imposition of further "undue burden" and "expense" on ATL, and the inexplicably retaliatory language and spirit in which he did so, the Court should hold him jointly and severally liable with Respondent for ATL's attorney fees and expenses. Fed. R. Civ. P. 45(d)(1); Order at \*7-8.

**ARGUMENT**

***Legal Standard: Calculation of a 'Presumptively Reasonable Fee'***

In the Second Circuit, a court's calculation of "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011), *citing Arbor*

*Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008). "The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190.

In determining that rate, the court must "bear in mind" a number of "case-specific variables." *Id*. Those include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 186 n.3 (citation omitted); *accord Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20-mc-23 (AT), 2021 WL 1353756, at *1-2 (S.D.N.Y. Apr. 12, 2021) ("*Angelo*").

In *Angelo*, another court in this District recently awarded more than $47,000 in attorney fees and $154 in expenses to a party that had successfully moved under Rule 45 to quash third-party subpoenas for documents and a deposition appearance. 2021 WL 1353756, at *4; *see* Order at *8, *citing Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, 2020 WL 4700910, at *3 (S.D.N.Y. Aug. 13, 2020). Unlike here, the *Angelo* respondent had not contested the motion to quash. *See* 2021 WL 1353756, at *1. The *Angelo* court nonetheless concluded that counsel's total of 66 hours worked was "reasonable." *Id.* at 4. In addition, the *Angelo* court found "reasonable" the hourly rates of the petitioner's counsel at Jones Day, accepting partner hourly rates as high as $1,350, and associate hourly rates as high as $650. *See id.* at *3.

### *ATL Counsel's Blended Hourly Rate Is Reasonable*

The accompanying declaration of David S. Korzenik sets forth the time entries for the three attorneys who worked on ATL's Motion to Quash, the basis for each attorney's hourly rate,

4

and the two expenses incurred.  *See* Korzenik Decl. ¶¶11-20 & Ex. A.  Lead counsel David Korzenik (hourly rate of $550) has defended book, magazine, and online publishers, as well as broadcasters, news organizations, and human rights organizations from claims directed at the content of their publications for 35 years.  Among the Reporter's Privilege matters he has litigated are *Schoolcraft v. City of New York*, No. 10-cv-6005 (RWS), 2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014) (representing journalist Graham Rayman), and *Green v. Cosby*, No. 16-mc-99 (PGG), Dkt. No. 13 (S.D.N.Y. May 11, 2016) (representing *New York* Magazine). Korzenik Decl. ¶17.  Firm partner Terence Keegan (discounted hourly rate of $425, in practice since 2014) and associate Zachary Press (hourly rate of $400, in practice since 2018) likewise focus on advising media organizations and representing them in court; with Mr. Korzenik, their recent Reporter's Privilege work includes defending *Fortune* and former *Fortune* Editor-at-Large Roger Parloff against a subpoena from former Theranos president Ramesh "Sunny" Balwani. *See Balwani v. Parloff, et al.*, No. 19-mc-00507 (ALC), Dkt. No. 16 (S.D.N.Y. Dec. 6, 2019) (pending).  Korzenik Decl. ¶18.

Counsel's firm is small, with fewer than 10 attorneys.  The time summaries accompanying the Korzenik Declaration show how this matter often occupied a significant portion of its attorneys' days, and pressed two of the firm's partners and the its associate off other matters and clients.  As the Korzenik Declaration sets forth, Respondent's counsel forced ATL into a litigation "fire drill"; such emergency efforts often require more time than otherwise. While the defense of ATL engaged issues with which counsel had much familiarity and experience, the scattershot and expansive nature of the Subpoena's demands made fact evaluation and motion briefing all the more time consuming.  Time had to be spent too on debunking the peculiar rationales offered by Respondent's counsel for the Subpoena.

Here, counsel's blended hourly rate of approximately $481 is reasonable – indeed, well below prevailing market rates for the specialized legal services they supplied – especially given the firm's particular focus on media defense and First Amendment law, and its experience in litigation and trial/appellate advocacy in this District and in the Second and Ninth Circuits. *See* Korzenik Decl. ¶13 & Ex. A at 12-13. *See, e.g.*, *Adelson v. Harris*, No. 12-cv-6052 (JPO), 2018 WL 1585676, at *2 (S.D.N.Y. Mar. 29, 2018) (in fees motion following anti-SLAPP dismissal of defamation action, attorneys' blended hourly rate of $465 was "clearly reasonable – indeed, cheap – in light of prevailing market rates, the level of quality of counsel, and the complexity of the legal issues involved").

***Respondent and His Counsel Should Be Held Jointly and Severally Liable for ATL's Costs***

Rule 45 provides for a court to impose fees liability "on a party *or attorney* who fails to comply" with it. Fed. R. Civ. P. 45(d)(1) (emphasis added). One court in this Circuit imposed Rule 45 liability on an attorney whose subpoena bore "the markings of a hastily arranged affair" and appeared to be retaliatory in nature – the attorney's "way of 'getting back' at" a former client. *Molefi v. Oppenheimer Tr.*, No. 03-cv-5631 (FB)(VVP), 2007 WL 538547, at *3-4 (E.D.N.Y. Feb. 15, 2007); *see* Order at *7, *citing Molefi*, 2007 WL 538547, at *3. Another court imposed fees and expenses under Rule 45 against an attorney who had issued a subpoena for testimony "that he should have known could not be compelled," and whose "sweeping" document demand was "prima facie improper." *Am. Int'l Life Assurance Co. v. Vasquez*, No. 02-cv-141 (HB), 2003 WL 548736, at *2-3 (S.D.N.Y. Feb. 25, 2003); *see* Order at *8, *citing* same.

The Court has already found that Respondent's Subpoena "should never have issued." Order at *8. Especially in light of the post-Order correspondence, Mr. Tauler should be held

jointly and severally responsible with Respondent for their baseless attempt at retaliating against ATL for its coverage of public proceedings.

## CONCLUSION

The Court should award Breaking Media, Inc. $38,187.50 in attorneys' fees and $106.17 in related costs and expenses, said fees, costs, and expenses to be paid jointly and severally by Respondent Evan P. Jowers and his counsel, Robert Tauler, Esq. of Tauler Smith LLP, within 30 days of the Court's order.

Respectfully submitted,

Dated: New York, New York
April 28, 2021

MILLER KORZENIK SOMMERS RAYMAN LLP

By: /s/Terence P. Keegan
Terence P. Keegan
tkeegan@mkslex.com
David S. Korzenik
dkorzenik@mkslex.com
1501 Broadway, Suite 2015
New York, New York 10036
Phone: (212) 752-9200
*Attorneys for Breaking Media, Inc.*
*dba Above the Law*