MILLER KORZENIK SOMMERS RAYMAN LLP
THE PARAMOUNT BUILDING • 1501 BROADWAY, SUITE 2015 • NEW YORK, NY 10036
TEL 212-752-9200 • FAX 212-688-3996 • WWW.MKSR.LAW

May 25, 2021

*Via ECF*
Hon. Katherine Polk Failla, U.S.D.J.
United States District Court, S.D.N.Y.
40 Foley Square, Room 2103
New York, NY 10007

      Re:    *Breaking Media, Inc. ("ATL") v. Jowers*, No. 1:21-mc-00194-KPF
            Reply in Further Support of Application for Attorneys' Fees

Dear Judge Failla,

      Pursuant to Your Honor's order (Dkt. 36), we write in further support of ATL's application for reasonable attorneys' fees incurred making its motion to quash the Subpoena served on ATL by Respondent and his counsel, Robert Tauler.

      ***ATL Counsel's Time Was Reasonably Spent.*** Mr. Tauler contends in his opposing declaration that he spent far less time issuing and litigating the Subpoena and 30(b)(6) deposition demand than our firm did in defending against it and moving to quash. *See* Dkt. 34-1 ("Tauler Fees Decl."), at ¶12. No doubt, Mr. Tauler gave the entire matter less time and less thought than we did. It requires little effort to fire off two sets of shotgun discovery demands with 25 deposition topics and 20 document requests. *See* Korzenik Decl. Ex. A (Dkt. 15-1), at 8-9, 15-17. In short, it takes little time to make a mess, but far more time to clean it up. *See* ATL Memorandum in Support ("Fees Mem.") (Dkt. 31), at 5.

      We had to file an initial emergency motion to quash; prepare an amended motion; then draft a reply and a supplemental submission regarding a related ruling on similar third-party discovery in Respondent and Mr. Tauler's Texas case. Apart from the investigation we had to conduct to analyze and intercept Mr. Tauler's lengthy discovery demands, we had four filings to make. For his part, Mr. Tauler made only one filing. [1] Facing demands not just for documents, but also for a deposition, we could not simply serve an objection as Rule 45 would otherwise allow. We had the burden to move to quash. Given that Mr. Tauler imposed on ATL a subpoena and Rule 30(b)(6) demand that "should never have issued" (*see* Order at *8) – and that Mr. Tauler chose the

---

[1] Mr. Tauler's suggestion in his memorandum opposing fees ("Fees Opp.") (Dkt. 34) that he withdrew a portion of his Subpoena has no support in the record. *Compare id.* at 9, *with Breaking Media, Inc. v. Jowers*, No. 21-mc-194-KPF, 2021 WL 1299108 ("Order"), at *2, 7-8 (S.D.N.Y. Apr. 7, 2021) (Failla, J.).

burdensome procedural framework in which this unfolded – he should bear the cost of that needless expense.

Due to the time constraints that Respondent imposed on us, we relied on a portion of legal analysis from another federal reporter's privilege motion that our firm had filed. [2] We had no time to do otherwise. But, significantly, summarizing the reporter's privilege occupied relatively little of our time in responding to Jowers' demands. Rather, the majority of the work consisted in our examining all the demands, determining with our client what documents might exist and what was at stake, figuring out where the privilege could be properly invoked, and then preparing a motion that addressed those facts. *See* Korzenik Fees Decl. Ex. A (Dkt. 30-1).

Notably, a fees application that Mr. Tauler made to this Court last year completely contradicts his protests over the fees that he and Respondent forced ATL to incur. *See Polaris Images Corp. v. Enttech Media Group LLC*, No. 19-cv-08208-KPF (S.D.N.Y.) (Failla, J.) ("*Enttech*"), Dkts. 24-27 (Mar. 4, 2020). In that application, Mr. Tauler sought more than $32,000 for nearly 76 hours his firm spent preparing two motions to dismiss that he never had to file. *See Enttech*, Dkt. 25, at 8-9; Dkt. 26, at 39-44. The rates he sought included his own at $575 per hour – negotiated "for this matter" – and an associate's rate at $425 per hour. *Enttech*, Dkt. 26, at 2-3 ¶6. The work for which Mr. Tauler sought compensation included seven hours to draft a pre-motion letter and conduct related research, and 27 hours to draft the fee application itself. *See Enttech*, Dkt. 26, at 41 (entry dated 1/23/2020), 42-44 (entries dated 2/7/2020 through 2/12/2020).

This "substantial" time was reasonable, Mr. Tauler contended, to defeat papers he characterized as "slapdash" and filed "without proper investigation." *See Enttech*, Dkts. 27, at 3; 25, at 14. Mr. Tauler also emphasized the same 12 legal factors that ATL has in its application. *Compare Enttech*, Dkt. 25, at 17-18, *with* Fees Mem. at 4.

The Court did not reach the reasonableness of Mr. Tauler's rates and time spent because it held his client was not a "prevailing party" as was required to obtain the award he sought. *See Enttech*, 2020 WL 2904865, at *1 (S.D.N.Y. June 3, 2020). Nonetheless, his 2020 case exemplifies the time that is reasonably required to analyze "slapdash" papers and frame for the Court the grounds for their rejection. The Court should not credit Mr. Tauler's belittling ATL's fees application, when – just like he represented his firm was required to do last year – ATL's counsel bore the burden of focusing the facts and legal issues for the Court's consideration.

***Fees Awarded Should Reflect the Reasonable Value of Counsel's Time Based on Quantum Meruit.*** When Mr. Korzenik was first contacted by ATL to manage this matter, he spoke with John Lerner, Breaking Media's CEO. While we had represented ATL in the past, we did not set or agree upon a set rate. Given the urgency of evaluating and responding to Mr. Tauler's Subpoena, Mr. Korzenik and Mr. Lerner did not discuss

---

[2] We cited that case in our fees application. *See* Fees Mem. at 5, *citing Balwani v. Parloff, et al.*, No. 19-mc-00507 (ALC), Dkt. No. 16 (S.D.N.Y. Dec. 6, 2019) (pending).

the rate at which work would be done. Thus, the evaluation of the reasonable rate would appropriately be done on a quantum meruit basis. *See* Fees Mem. at 4-5 (discussing factors in determining presumptively reasonable fee). Publishing clients have been under financial pressure during the pandemic; and we often have accommodated them on fees and rates out of concern for the burden they were facing. For this matter, we simply turned to the work we needed to do within the time constraints imposed on us.

In his *Enttech* application for fees last year, Mr. Tauler proposed an hourly rate for himself of $575, and $425 for his associate. *See Enttech*, Dkt. 26, at 2-3 ¶6. Those far exceed the values that he would propose for our time, and they even exceed the rates we have asked the Court to adopt ($550/hour for Mr. Korzenik; $425/hour for Mr. Keegan; and $400/hour for Mr. Press). Our time should be valued at the full amounts we have sought, particularly when our firm's experience in this area is decisively more extensive than Mr. Tauler's. Mr. Korzenik's initial declaration sets forth his experience representing news organizations in reporter's privilege and related matters as well as his experience teaching media law for over 20 years. *Compare* Tauler Fees Decl. ¶12, *with* Korzenik Fees Decl. (Dkt. 30), at ¶¶14-18. [3]

Mr. Korzenik spoke with Mr. Tauler concerning the rates we would accept to avoid motion practice on the amount of fees due. He asked for our time charges. All the time charges were not yet in our billing system, but Mr. Korzenik sent him the time descriptions we had. We also offered a reduced rate of $425/hour and a further discount of 10% if we could avoid having to litigate our fee application. He declined that offer as well, and tried to wrap that discussion into the same Texas conspiracy theory that had fueled his last-minute subpoena to ATL and another to the Texas court admissions committee seeking the same kinds of materials. *See* Korzenik Fees Decl. ¶¶8-9.

In the course of his exchange with Mr. Korzenik, Mr. Tauler claimed, without the slightest basis in fact, that we were really acting for his adversary in Respondent's Texas case – and not for our client ATL.

***Mr. Tauler's Emails Speak for Themselves.*** Mr. Tauler accuses ATL's counsel of waging an "insidious" campaign to smear him in our fees application. *See* Fees Opp. at 14. Yet as we have noted, his emails – which Mr. Tauler amplified in the wake of our fees filing – speak for themselves. *See* Korzenik Fees Decl. at ¶¶9-10 & Ex. B. Not only does Mr. Tauler still harbor his baseless theory that ATL operates as an arm of Respondent's Texas adversary; but Mr. Tauler's emails also display the retaliatory harassment to which he has subjected ATL and more recently, its counsel:

---

[3] The court in *Sands v. Bauer Media Group USA, LLC* did not "reject[ ]" our rates in that case as "too high" (Fees Opp. 4, 9). It accepted them in its fee award. *See* Dkt. 34-2, at 33. Further, those rates had been set "by agreement" with that client at the case outset in **2017**. *See* Fees Opp. 9, *citing* Dkt. 34-2, at 28. Our rates have only modestly increased since then. They remain well below what other attorneys with comparable experience in this district receive for similar work. *See* Fees Mem. at 6.

3

> *To ATL, Feb. 10:* "Thought I would reach out on [sic] last time before I blow up your spot . . . . I don't want to be tagging your social media accounts and embarrassing you (as much as it would be great to give you a taste of your own medicine), so I encourage you to have a lawyer call me so we can set this up."
>
> *To counsel, Apr. 15:* "Thanks for your email - I thought you should know Mr. Kinney has apparently become unhinged in the past 24 hours - filing various briefs implicating you in Texas and making improper threats of violence. His conduct really hurts the viability of what we have been discussing and really concerns me about his mental health. . . ."
>
> *To counsel, Apr. 30, following ATL's fees application:* "Trust me, listening to Robert Kinney was a very, very bad idea gentlemen. You are not advancing your client's interests by making ad hominem attacks on opposing counsel in a public filing. . . . You are such a little pussycat on the phone David, I can't believe you went rogue! . . . **You will regret what you have done, I can promise you that.**"
>
> *To counsel, Apr. 30:* "Are either of you (Terence and Zach) willing to sign a declaration that these rates and hours are not accurate? . . . If you tell me the truth, I will leave you out of my motion. If not, I will be going against you as well. Just remember, I never went after you personally -- you started it and made the mistake of participating in a fraud on the court."
>
> *To counsel, May 2:* "Hey Terence, nice hair. It took you thirty minutes to read the Court's order according to you and I am beginning to see why. You seem a little, um, slow.
>
> "But the 2.8 hours you said you spent reviewing the 'supplemental motion' . . . is even more fraudulent than your hair. You are going down with the ship my friend. One of the downsides of being a partner."
>
> *To counsel, May 2:* "David, can you do me a personal favor and tell me what the heck are you talking about in this Twitter post from 2017? I wanted to ask your seven twitter followers but they all appear to be bots."
>
> *To counsel, May 2:* "Honestly, why did you start a Twitter in the first place? . . . You would be better off shouting down a well. No one cares about you David; please take down your Twitter and save yourself future embarrassment."

Mr. Tauler and his client never offered to pay ATL's fees and walk away, as they now suggest. *Compare* Fees Opp. at 3, *with* Fees Mem. at 2. Instead, they repeatedly attempted to entangle ATL in their Texas litigation, while Mr. Tauler threatened to sue ATL personally and leveled a series of gratuitous taunts.

4

We had no choice but to prepare and file the present application.  We did not respond to Mr. Tauler's rounds of emails.  We chose not to indulge them.  That would only have cost our client further.

***Mr. Tauler Has Been Warned About His Conduct Before.*** Lastly, Mr. Tauler mischaracterizes the time ATL and its counsel spent on March 8 as "irrelevant" to the motion to quash (*see* Fees Opp. at 12).  Yet that was when the magistrate judge in Respondent's Texas litigation publicly took Mr. Tauler to task for his "combative filings," and warned him "that any further abuses of process . . . , any violation of rules, or any other misconduct will result in sanctions in addition to those that are already under consideration for past actions."  Dkt. 19-1, at 4.

Needless to say, ATL and its counsel had been monitoring the Texas litigation, and they promptly brought the March 8 ruling to this Court's attention in a supplemental filing (Dkt. 19).  The Texas ruling was not the first such judicial warning Mr. Tauler has received.  In 2019, a court in the Southern District of California directed Mr. Tauler to review and comply with the district's local rule on professionalism, after expressing how "unamused" it was with his participation in an "insult arms race" with his adversary.  *See In re Outlaw Lab., LP Litig.*, No. 18-cv-1882-GPC-BGS, 2019 WL 3858900, at *6 n.9 (S.D. Cal. Aug. 15, 2019).

We therefore request that the Court grant legal fees to ATL in the amount of $38,187.50, along with $106.17 in related costs and expenses, said fees, costs, and expenses to be paid jointly and severally by Respondent Evan P. Jowers and his counsel, Robert Tauler, Esq. of Tauler Smith LLP, within 30 days of the Court's order.

        Respectfully,

        /s/David S. Korzenik
        David S. Korzenik

        /s/Terence P. Keegan
        Terence P. Keegan

cc: Counsel of record via ECF