L781BRED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BREAKING MEDIA, INC.,

         Petitioner,

        v.                              21 mc 194 (KPF)

EVAN P. JOWERS,

         Respondent.                   Remote Oral Decision
------------------------------x
                                July 8, 2021
                                3:05 p.m.

Before:

          HON. KATHERINE POLK FAILLA,

                          District Judge

              APPEARANCES

MILLER KORZENIK SOMMERS RAYMAN LLP
    Attorneys for Petitioner
BY:  DAVID S. KORZENIK, ESQ.
     TERENCE P. KEEGAN, ESQ.

TAULER SMITH LLP
    Attorneys for Respondent
BY:  ROBERT TAULER, ESQ.

1              (Case called)

2              THE COURT:  Please state your name for the record,
3    starting with petitioner.

4              MR. KORZENIK:  Yes.  This is David Korzenik of Miller
5    Korzenik Sommers Rayman LLP, on behalf of Breaking Media, the
6    owner and publisher of abovethelaw.com.  And with me, my
7    partner --

8              MR. KEEGAN:  Terence Keegan.

9              THE COURT:  I'm sorry.  Could you say that again,
10   please.  This is Mr. Keegan?

11             MR. KEEGAN:  Yes, your Honor.  Terence Keegan with
12   Miller Korzenik for petitioner.

13             THE COURT:  Thank you so much, and good afternoon to
14   both of you.

15             MR. KEEGAN:  Thank you.

16             THE COURT:  And representing respondents this
17   afternoon?

18             MR. TAULER:  Good afternoon, your Honor.  This is
19   Robert Tauler on behalf of Evan Jowers.

20             THE COURT:  Mr. Tauler, thank you very much.

21             First of all, let me thank you very much for your
22   patience.  I had a preliminary injunction hearing that was
23   absolutely positively going to end by 2:30, until it didn't,
24   but I appreciate your patience, and I'll begin right away.

25             This is an oral decision on an application for

1    attorney's fees.  So let me please begin with the background.
2             By subpoena dated February 1st of 2021, respondent
3    sought the production of 20 categories of documents and a
4    deposition pursuant to Federal Rule of Civil Procedure 30(b)(6)
5    on 25 topics -- all to take place on or before February 18th of
6    2021.
7             On February 17, 2021, petitioner filed a motion to
8    quash along with supporting papers.  In their submissions, the
9    petitioner requested that the Court stay petitioner's
10   obligation to comply with the subpoena pending resolution of
11   this motion, and also sought leave to file an amended motion to
12   quash and supplemental briefing in further support.
13            This Court granted petitioner's request and set a
14   briefing schedule for the motion to quash.  And by opinion
15   dated April 7th of 2021, the Court granted the motion to quash.
16   And that decision is contained at *Breaking Media Inc. v.*
17   *Jowers*, 2021 WL 1299108, at *7.  And finding that the subpoena
18   "should never have issued," the Court also granted the
19   petitioner's request for reasonable fees and expenses pursuant
20   to Federal Rule of Civil Procedure 45(d)(1) and set a briefing
21   schedule for that anticipated motion.
22            Petitioner filed its motion for fees and expenses on
23   April 28 of 2021; respondent filed his opposition on May 18th;
24   and petitioner filed a reply on May 25th.
25            Turning now to the applicable law, these are things

that I know the parties are familiar with, but I do want to have some of them at least in this record.

"Courts imposing a sanction of attorney's fees under Rule 45(d)(1) have often granted sanctions equaling most if not all of the attorney's fees sought."  I'm quoting here from *Saint-Jean v. Emigrant Mortg. Co.*, an unreported decision at 2015 WL 13735434, at *6.  And that's an Eastern District decision from October of 2015.  But the touchstone of the inquiry remains whether the amount requested is "reasonable."  As one example, *Molefi v. Oppenheimer Tr.*, 2007 WL 538547, at *5, another Eastern District decision from 2007 (collecting cases).

Attorneys' fees are often awarded by determining the "'presumptively reasonable fee,'" often referred to as the "lodestar."  And it's discussed at length in the Second Circuit decision in *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, from 2011; that in turn quoted *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, a Second Circuit decision from 2008; and thereafter there was the Supreme Court decision in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542.  This fee is calculated by multiplying the "reasonable hourly rate and the reasonable number of hours required by the case."

My job is to look at the nature of the legal matter and context of the fee award in considering what is a

reasonable rate and reasonable and what is reasonable time expended in a matter.  A recent decision from this district discussing this topic is *Figueroa v. W.M. Barr & Co., Inc.*, 2020 WL 2319129, at *3.  And the Second Circuit has suggested that courts should consider factors including "the experience, reputation, and ability of the attorneys," "awards in similar cases," and more broadly:

"the purpose of the award; that is, a different presumptively reasonable fee may be warranted if the fee is being awarded as a sanction for misconduct than if the fee is being awarded in connection with a successful outcome in a statutory fee-shifting case in order to make its interpretation."  I'm quoting here from the *Arbor Hill* decision; and that in turn was discussing 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, a Fifth Circuit decision from 1974; that was later abrogated on other grounds by the Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87.

The Second Circuit has recently spoken to this issue in *Lilly v. City of New York*, 934 F.3d 222, a Second Circuit decision from 2019.  And it has advised district courts that we may, only after an initial calculation of the presumptively reasonable fee, adjust the total where it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  More fundamentally, the Second

Circuit has recognized that a district court exercises considerable discretion in awarding attorneys' fees.  The *Millea* and the *Arbor Hill* decision speak to that.

In this case, petitioner's counsel seeks $38,187.50 in attorneys' fees and $106.17 in reimbursable costs.  Plaintiff's counsel proffers as a "lodestar" the amount of $38,187.50, reflecting:

39.5 hours by Mr. Korzenik, the partner, at a lodestar rate of $550 per hour;

20.1 hours for partner Terence Keegan at a rate of $425 per hour; and

19.8 hours for associate Zachary Press at a rate of $400 per hour.

And considering the hourly rates and the number of hours worked by each attorney, petitioner effectively seeks a blended hourly rate of $481.

It argues that this rate is reasonable and "well below prevailing market rates for the specialized legal services [that counsel] supplied -- especially given the firm's particular focus on media defense and First Amendment law, and its experience in litigation and trial/appellate advocacy in this District[.]"  Petitioner further argues that the "reasonable rate" should be determined "on a *quantum meruit* basis" since there is no formal fee agreement between counsel and ATL.

1         Petitioner argues that it incurred additional costs
2    due to the timing of the subpoena and respondent's refusal to
3    stipulate to an extension of petitioner's deadline to respond,
4    and that its time was reasonably spent given the time
5    constraints and given respondent's counsel's conduct in
6    meet-and-confer sessions.
7         The respondent counters that petitioner's rates are
8    unreasonable and that the Court should award petitioner a
9    blended hourly rate of $326.11, which is the rate sought by the
10   same three attorneys in a copyright infringement case earlier
11   in this district.  Respondent also claims that petitioner's
12   hours are excessive because (i) petitioner recycled large
13   chunks of its briefing from another case and then recycled it
14   again in its amended memorandum of law; (ii) petitioner's
15   counsel claims deep expertise in addressing the legal issues
16   raised in the motion to quash, which should have obviated the
17   need for extensive legal research; (iii) petitioner should not
18   be reimbursed for time spent on administrative tasks or those
19   unrelated to the motion to quash.
20        Respondent further contends that his counsel did not
21   cause petitioner to incur additional fees, nor did the timing
22   of the subpoena.
23        And finally, respondent argues that petitioner did not
24   actually incur attorneys' fees because petitioner's counsel
25   failed to submit a declaration stating he has been paid by his

1    client already.

2            So as I noted earlier, I look at the cases such as

3    *Arbor Hill* from the circuit and when evaluating reasonable

4    hourly rates, the courts look to "the rate a paying client

5    would be willing to pay," and take into account "all

6    case-specific variables."  That's from the *Arbor Hill* decision.

7            It is also well settled that "a reasonable, paying

8    client wishes to spend the minimum necessary to litigate the

9    case effectively," and that "such an individual might be able

10   to negotiate with his or her attorneys, using their desire to

11   obtain the reputational benefits that might accrue from being

12   associated with the case."  Also from *Arbor Hill*.

13           The Second Circuit has a "forum rule," which requires

14   courts to "generally use 'the hourly rates employed in the

15   district in which the reviewing court sits' in calculating the

16   presumptively reasonable fee."  I'm quoting here from *Simmons

17   v. N.Y.C. Transit Auth.*, 575 F.3d 170, a Second Circuit

18   decision from 2009.  And courts in this district have

19   recognized that an "attorney's customary billing rate for

20   fee-paying clients is ordinarily the best evidence of" a

21   reasonable hourly rate.  I'm quoting here from *In re Stock

22   Exchs. Options Trading Antitrust Litig.*, of former Judge Casey,

23   at 2006 WL 3498590, at *9, again, from 2006.

24           As I noted a few moments ago, the petitioner seeks a

25   blended hourly rate of $481, and respondent argues that a

1  blended hourly rate of $326.11 is more appropriate.

2  It is true that respondent's proposed rate is that
3  awarded by Judge Kaplan on a motion for sanctions in a
4  copyright infringement case.

5  But this Court declines to adopt Judge Kaplan's
6  blended rate, which was calculated based on work done primarily
7  by attorneys billed at lower rates (i.e., Mr. Korzenik billed
8  only 3.3 out of the 116.8 hours submitted for reimbursement),
9  and that is not the case here, where Mr. Korzenik worked nearly
10 half of the hours submitted for reimbursement.

11 So in determining what is a reasonable rate here in
12 this case, this Court has considered, among other things:

13 Petitioner's counsels' experience, as was done in the
14 case of *Johnson v. Magnolia Pictures LLC*, 2019 WL 5682951.

15 The court has also considered the complexity of the
16 issues raised in the motion to quash, the level of skill
17 required to perform the legal service properly, and the quality
18 of the legal work actually submitted to the Court.  I'm here
19 citing *Arbor Hill*.

20 And then other rates awarded for similar work in this
21 district, which were discussed in the *Saint-Jean* case I
22 mentioned earlier and the *Molefi* case discussed earlier.

23 I have, however, discounted the blended rate based on
24 the Court's concerns over the division of labor among the
25 attorneys.

L781BRED

By this I mean, I do not fault Mr. Korzenik for taking on the lion's share of the work in this matter, but I do have the discretion not to award senior partner rates for junior associates and paralegal work, and the billing records that I have reviewed do contain mismatches of this type.

And so on balance, and considering all these factors, I've determined that a blended rate of $400 per hour is appropriate.

And I'm now turning to the reasonable number of hours.

On that point, a Court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  I'm quoting here from *Haley v. Pataki*, 106 F.3d 478, a Second Circuit decision from 1997.

In addition, courts are instructed to examine the hours expended by counsel with a view to the value of the work product to the client's case.  And that's contained in cases such as *Lunday v. City of Albany*, 42 F.3d 131, a per curiam decision from 1994.

By contrast, the Court is to exclude "excessive, redundant[,] or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims."  And this is discussed in cases like *Quarantino v. Tiffany & Co.*, 166 F.3d 422, a Second Circuit decision from 1999.

But in determining whether hours are excessive, "the

critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  I'm quoting here from *Samms v. Abrams*, 198 F.Supp.3d 311, a Southern District decision from 2016.

And where "the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent."  I'm quoting here from *Yea Kim v. 167 Nail Plaza, Inc.*, 2009 WL 77876, at *4, a Southern District of New York decision from 2009.

Separately, a court retains the discretion to make across-the-board percentage reductions to exclude unreasonable hours, and that's colloquially referred to as "trimming the fat."  It's been done in many cases.  I guess the seminal case is *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, a Second Circuit decision from 1987; also in a recent decision, *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F.Supp.2d 421, a Southern District decision from 2011, which was affirmed by the Second Circuit at 487 Fed. App'x 619.

In prior cases I have sometimes undertaken to reduce certain tasks to a certain hourly billing, in other cases I've made across-the-board reductions, and here, what I've done is a bit of a hybrid insofar as I'm categorizing how the hours were spent and making across-the-board reductions in particular

categories.

On the issue of hours spent briefing the motion to quash, I note that petitioner's counsel claims 66.9 hours in connection with this matter, but the Court's redline comparison of the memorandum of law submitted by petitioner's counsel in the *Fortune Media* case and the initial memorandum of law filed in this case reveals that roughly six of 15 pages -- more than one third -- of the memorandum is taken word for word from the initial motion, including nearly all of the legal research and analysis. This suggests to this Court that the hours billed for drafting and editing petitioner's initial memorandum of law are excessive.

Furthermore, the Court's redline comparison of the initial memorandum of law and the amended memorandum of law reveals that roughly 11 pages -- more than half -- of the amended complaint is taken word nearly word for word from the initial motion, including, again, nearly all of the legal research and analysis. And this, again, suggests that the hours that are billed that this Court is considering for preparing your revised motion for sanctions are grossly exaggerated.

The Court also credits respondent's argument that, because petitioner's counsel claims extensive expertise in the field, and claim to have briefed many similar motions to quash, they should be efficient and need not have devoted excessive

1  time to researching unfamiliar issues or learning about new
2  areas of the law.
3         The Court also observes that outsized numbers of hours
4  are billed to tasks like proofreading, researching, editing,
5  drafting, and amending, which are not borne out by the work
6  product that I received.
7         In short, the total hours billed towards preparing the
8  motion to quash are excessive.
9         And the Court determines that a significant
10 reduction -- a 45 percent reduction -- is warranted such that
11 the Court will allow as reasonable hours 36.8 hours.
12        Separately, there are hours billed on meet-and-confer
13 sessions, email correspondence, and the instant application
14 proceedings.
15        In this regard, petitioner claims 13.5 hours in
16 corresponding with respondent's counsel, meeting and
17 conferring, and preparing the instant motion for fees.
18        And the Court's review of the parties' submissions --
19 including extensive email correspondence between the parties in
20 connection with the motion to quash and the motion for fees --
21 demonstrates that petitioner is entitled to recover for time
22 spent attempting to resolve these issues via meet-and-confers,
23 and in responding to respondent's counsel's demands.
24        Even here, however, the Court notes duplicative work
25 billed by petitioner's attorneys -- for example, multiple

1  attorneys billing for reviewing and responding to the same
2  emails from Mr. Tauler, and the same attorney billing for
3  reviewing the Court's order quashing the subpoena multiple
4  times -- as well as certain entries that appear to be unrelated
5  to the motion to quash.
6          In this category, the Court determines that a
7  15 percent reduction in hours sought in connection with this
8  category of meet-and-confers, email correspondence, and the
9  instant motion, is justified, yielding a total of 11.48 hours.
10         There are a few miscellaneous arguments I would like
11 to address.
12         First, the Court rejects respondent's argument that
13 petitioner is not entitled to fees because Mr. Korzenik did not
14 state in his declaration that he has been paid for his work
15 because the imposition of a fee-related sanction under
16 Rule 45(d)(1) is not the equivalent of an award of attorney's
17 fees to a prevailing party under a fee-shifting statute.  And
18 that's discussed in the *Molefi* decision.
19         The Court also rejects petitioner's argument that they
20 incurred additional costs due to the timing of the subpoena and
21 respondent's failure to agree to an extension.  There is a
22 reasonable number of hours to be worked in responding to the
23 motion to quash, and the number of hours considered reasonable
24 does not change whether they are incurred over the course of
25 three days or one week.

Finally, there is the issue of reimbursable costs, and the Court finds that the costs sought here -- namely, court filing fees and the costs for providing courtesy copies -- which total $106.17, are reimbursable in their entirety.

Separately, I've been asked to sanction respondent's counsel, and I do understand that Federal Rule of Civil Procedure 45 provides for a court to impose liability "on a party or attorney who fails to comply" with that provision.

Petitioner asks the Court to hold respondent's counsel jointly and severally liable for the costs and expenses awarded.

The Court declines to do that. Although the Court believes that the subpoena at issue here should not have issued, it is not clear to this Court that respondent's counsel was the driving force behind the subpoena, nor is there evidence of bad faith on the part of respondent's counsel, as would be necessary before I were to sanction respondent's counsel.

And so in total, I have found that the reasonable blended rate is $400, and the reasonable number of hours is 48.28, and that yields $19,312 in attorney's fees and $106.17 in costs.

And I do want to note that the imposition of this fee-related sanction under Rule 45(d)(1), again, is not the equivalent of an award of attorney's fees to a prevailing party

1  under a fee-shifting statute.  And so I'm not presuming in this
2  opinion to assess the reasonableness of the billing rates or
3  hours that might be requested by counsel for petitioners or
4  even lead counsel for respondents in the future.
5          In short, based on the record before me, and
6  considering the law as I've stated and the discretion that I
7  have, I'm awarding $19,312 in legal fees.  I am assessing them
8  against respondents and in favor of petitioner's counsel, and
9  $106.17 in costs.
10         Mr. Korzenik, I believe I've addressed the issues that
11 are open.  From your perspective, sir, is there anything else
12 to address in this conference?
13         MR. KORZENIK:  No, your Honor, nothing further.  I
14 just would only mention that we did not bill for any of the fee
15 applications.  It appeared that your Honor may have considered
16 that.
17         THE COURT:  I did.  I understood that you were doing
18 that.  Nothing was billed preparing the instant motion, sir?
19         MR. KORZENIK:  No.
20         THE COURT:  Okay.  All right.  Is it your intention to
21 so bill, sir?
22         MR. KORZENIK:  I'd have to speak with my client and
23 figure out what should be done, but --
24         THE COURT:  Okay.  I will --
25         MR. KORZENIK:  But I have --

1    THE COURT: All right. I'll figure it out and I'll
2  amend it. I appreciate the clarifications that this was time
3  spent with email correspondence with the respondent's counsel
4  and hours spent on meet-and-confers.
5    Mr. Korzenik, I'd like to ask you as well, please, to
6  obtain a transcript of this oral decision in the ordinary
7  course in case we need it for something further in this case.
8  Thank you, sir, for doing that.
9    MR. KORZENIK: Okay. Thank you.
10   THE COURT: Of course.
11   Mr. Tauler, anything else to address in this
12 conference?
13   MR. TAULER: One more thing, your Honor. I thank the
14 Court for its very thoughtful and reasoned analysis and the
15 time it took to do so. I did want to point out to the Court
16 one comment that was made. I believe the Court said that fees
17 were not paid already, and then later on in the oral decision
18 suggested that there was a fee arrangement or, in other words,
19 that BMI is responsible for the fees, and I included the fact
20 that there is no evidence that BMI is responsible for fees not
21 so much to indicate that they haven't paid yet but rather that
22 they are under no obligation to pay fees at all based on the
23 record presented, and I just wanted to clarify that point. And
24 I understand the Court's perspective with respect to Rule 45,
25 but in case that was something I could provide clarity on, I

1  just want to posit that clarification.

2  THE COURT:  Okay.  Sir, thank you very much for that
3  clarification.  I don't think I misunderstood.  I think the
4  point that I was arriving at was that in some cases -- I do
5  think I understood you to be saying that petitioner's counsel
6  was not entitled to fees because he had not made such a
7  statement in his declaration that he had been paid for his
8  work.  Did I misunderstand that argument, sir?

9  MR. TAULER:  I believe so, your Honor.  The argument I
10 was trying to make is that there's no evidence in the record
11 that there is any sort of fee arrangement between Breaking
12 Media and Mr. Korzenik's law firm; in other words, it's unclear
13 how or in what manner Mr. Korzenik would have been compensated
14 had the Court not made the order which seems by its terms that
15 it is designed to compensate Breaking Media for fees it would
16 have to pay.  There is no engagement agreement produced; there
17 is no declaration stating that BMI was under an obligation to
18 pay; and it's notably absent from the declaration because in
19 the bankruptcy declaration, such statements were made and in
20 fact exercised.

21 THE COURT:  I see, sir.  Thank you.

22 Okay.  It does not change my decision about the amount
23 of the award, but I do think I understand better the argument
24 that you were making at page 5 of your opposition.  Thank you.

25 All right.  With that, I thank you very much for

1  participating in this conference this afternoon.  And you'll
2  have to excuse me, please.  I have a criminal sentencing that
3  I'm now a half an hour delayed on.  So I will wish each of you
4  safety and good health, continued safety and good health during
5  this pandemic.
6          We are adjourned.  Thank you.
7          ALL COUNSEL:  Thank you, your Honor.
8                              o0o